Isidora Gerould, Respondent, v. James R. Wilson, Impleaded, etc., Appellant.

Letters of administration having been issued to defendant B., by the surrogate of Steuben county, he gave a bond, with the other defendants as sureties, conditioned that he would faithfully execute the duties of the bond, and " obey all the orders of the surrogate of the county of Ontario * * * or of any other officer or court having jurisdiction in the premises." In an action upon the bond, *held*, that the mistake in naming the surrogate of Ontario did not vitiate the instrument; that, leaving out that clause, enough remained to meet the requirements of the statute (2 R. S. 77, § 42) and to hold the obligors.

Bonds taken by an officer in the course of official duty, to and for the benefit of another, are not open to the objections to bonds taken by an officer, to and for himself, which must more closely follow the statutory requirement; in the former case the substance is looked for more than the form, although it be a surety that is to be held.

The letters were, upon application of a surety, revoked in 1864. No other administrator was appointed. In 1876, B. was required to account. B. appeared and rendered his account, and he was ordered to pay to plaintiff, as next of kin, a certain sum, as her distributive share of the estate. It appeared that the moneys he was thus ordered to pay over had come into his hands officially, before the revocation of the letters. *Held*, that the surrogate had jurisdiction and power to decree distribution, and that his decree was conclusive as to the sureties.

The provisions of the Revised Statutes, in reference to the accounting of administrators, were not repealed by the act of 1865 (chap. 733, Laws of 1865) providing for the accounting of an executor or administrator who has been removed on the application of his successor.

A removed administrator, as long as he is liable for assets that have come into his hands, is amenable to process from the surrogate calling him to an account.

The sureties upon the bond of an administrator are privies to proceedings against their principal, and where he is, without fraud or collusion, concluded, they are concluded also.

(Argued June 1, 1880; decided September 21, 1880.)

Appeal from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of defendant James R. Wilson, entered upon the report of a referee. (Reported below, 16 Hun, 530.)

This action was upon a bond, given by defendant Byron H. Wilson, as administrator of the estate of James Wilson, deceased. Defendant James R. Wilson, one of the sureties alone appeared and answered.

Letters of administration were issued to said Byron H. Wilson, by the surrogate of the county of Steuben, in May, 1864, and on the same day the bond was delivered to said surrogate. The condition of the bond was as follows :

" The condition of this obligation is such that if the above bounden Byron H. Wilson, administrator of all and singular, the goods, chattels and credits of James Wilson, late of Prattsburgh, deceased, shall faithfully execute the trust reposed in him as such ; and, also, if the said Byron H. Wilson shall obey all the orders of the surrogate of the county of Ontario, or of the person charged by the constitution and laws with the performance of the duties of the office, or of any other officer or court having jurisdiction in the premises touching the administration of the estate committed to him ; then the above obligation to be void, otherwise to remain in full force and virtue."

In November, 1864, said surrogate, upon the application of the sureties, removed said administrator and revoked his letters.

Proceedings were instituted before the surrogate of Steuben county, by the plaintiff, in which said administrator was cited and required to render a full account of all his proceedings as such administrator ; he did render an account, and on the 25th day of February, 1876, a final decree was made and granted by the said surrogate, directing and requiring the said administrator to pay to the plaintiff $401.51, for her distributive share of the estate of the deceased, as one of his next of kin. A copy of such decree was served upon said Byron H., and a demand made upon him to pay as required, which he refused. The surrogate delivered to plaintiff a transfer of said decree, and the same was docketed in Ontario county, where the administrator then resided, and the same was docketed as a judgment. Execution was issued thereon and returned unsatisfied. The

surrogate thereupon assigned and transferred said bond to the plaintiff, and authorized him to bring an action thereon.

*William Rumsey* for appellant. The defendant here (the surety) is not liable for failure of the administrator to obey the order of the surrogate of any county but the county of Ontario. (*Getty* v. *Binssé*, 49 N. Y. 385, 389 ; *Lang* v. *Pike*, 28 Ohio St. 488 ; *Pickersgill* v. *Lahens*, 15 Wall. 140, 144 ; Brandt on Guar., etc., § 393 ; *Myers* v. *Parker*, 6 Ohio St. 501.) Where the terms of the bond are certain, the liability of the surety cannot be extended by implication. (*Dobbin* v. *Bradley*, 17 Wend. 422, 425.) If there was a mistake in the bond, it cannot, in this action, be shown and corrected. (Brandt on Guar., § 118.) The surety becomes liable only when the administrator has failed to obey a lawful order of the surrogate to perform some specific duty. (*Annett* v. *Kerr*, 2 Robt. 563, 564, 565 ; *People* v. *Corlies*, 1 Sandf. S. C. 238, 243–5 ; Dayton on Surrogates, 577–582.) The words in the bond not required by the statute, being in excess of its requirements, are of no force, and the bond, as to them, is void *pro tanto*. (*U. S.* v. *Bradley*, 10 Peters, 343, 364 ; *State of Ohio* v. *Findley*, 10 Ohio, 51, 58 ; *Hawes* v. *Marchant*, 1 Curt. C. C. 136, 139, 140 ; *Armstrong* v. *United States*, Peters' C. C. 46 ; *Hall* v. *Cushing*, 9 Pick. 395, 403 ; *U. S.* v. *Howell*, 4 Wash. C. C. 620.) The sureties upon an administrator's bond can only be made liable for disobedience of the administrator to lawful orders of the surrogate. (*Annett* v. *Kerr*, 2 Robt. 556 ; Redfield on Surr. Courts, 428.) So far as the decree goes beyond the jurisdiction of the surrogate, it is to be treated as void everywhere. (*Gilliland* v. *Sellers' Adm'rs*, 2 Ohio St. 223 ; *Gossett* v. *Howard*, 10 Q. B. 359 [59 E. C. L.] ; 1 Smith's Lead. Cas. [11th ed.] 1100, 1101 ; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559, 568, 570, 571 ; *Windsor* v. *McVeigh*, 93 U. S. S. C. 274 ; *Annett* v. *Kerr, supra ; People* v. *Corlies*, 1 Sandf. S. C. 228, 246 ; *Attorney-General* v. *Lord Hotham*, 1 Turn. & Russ. 209, 219.) The decree of the surrogate is void for the reason that no suc-

cessor of the removed administrator was appointed before the accounting was had. (4 Edm. Stat. 493, § 36.)

*Henry M. Field* for respondent. The bond, when delivered to the surrogate of Steuben county, and filed in his office, bound the obligors to obey the orders of the surrogate granting the letters of administration. (3 R. S. [6th ed.] 76, § 214 ; id. 82, § 56.) The bond was in form a sufficient compliance with the statute. The word " Ontario " was but surplusage, and did not, under all the circumstances, in any way affect or change the liability of the administrator, or the sureties thereon. (*Farley, admr.,* v. *McConnell,* 52 N. Y. 630 ; 7 Lans. 428 ; *Wiser* v. *Blackly,* 1 Johns. Ch. 607; *Board of Sup'rs* v. *Pindar,* 3 Lans. 8 ; *Village of Warren* v. *Phillips,* 30 Barb. 646 ; *Ring* v. *Gibbs,* 26 Wend. 501 ; *Foster* v. *Foster,* 7 Paige, 48 ; *Douglass* v. *Howland,* 24 Wend. 35 ; *Dayton* v. *Johnson,* 69 N. Y. 419–425 ; •*Annette* v. *Terry,* 35 id. 256 ; *Casoni* v. *Jerome,* 58 id. 315 ; *Coleman* v. *Bean,* 3 Keyes, 94.) Upon the strength of this bond the administrator having obtained the possession and control of all this estate, he and his sureties should be held liable on the bond, and not be allowed to escape by reason of technicalities alone. (*Belloni* v. *Freeborn,* 63 N. Y. 387 ; *Russell* v. *Freer,* 50 id. 67 ; *Gates* v. *McKee,* 2 Kern. 232 ; *Wiser* v. *Blackly,* 1 Johns. Ch. 607; *Coleman* v. *Bean,* 3 Keyes, 94 ; *Springstead* v. *Lamson,* 32 N. Y. 703 ; De Colyar on Guarantees, 202; Fell on Suretyship and Guarantees, 503 ; *French* v. *Cathcart,* 1 Comst. 96, 102 ; *People* v. *Falconer,* 2 Sandf. Sup. Ct. 81 ; *Kelly* v. *McCormick,* 28 N. Y. 318 ; *Loaners' Bank* v. *Jacoby,* 17 N. Y. Sup. Ct. 143 ; *Wheaton* v. *Fay,* 62 N. Y. 275.) The bond is but one contract, really, containing three conditions, and a breach of either condition is practically a breach of the whole, and the liability of the obligors attached. (*Ring* v. *Gibbs,* 26 Wend. 501 ; *Dayton* v. *Johnson,* 69 N. Y. 419 ; *The People ex rel. Lent* v. *Hascall,* 22 id. 188 ; *Gottsberger* v. *Taylor,* 19 id. 150 ; *Belloni* v. *Freeborn,* 63 id. 388.) The surrogate had jurisdiction to make the decree dated the 25th February, 1876. (3 R. S. [6th ed.] 99–104; Laws of 1837,

chap. 360, § 36 ; Laws of 1862, chap. 220 ; *Dubois* v. *Sands*, 43
Barb. 412 ; Redfield on Surrogates, 365 ; *Staats* v. *Hudson R.
R. Co.*, Keyes, 196 ; Dwarris on Statutes [Potter's ed.], 155 ;
*Bowen* v. *Lease*, 5 Hill, 225 ; *Wallace* v. *Bassett*, 41 Barb. 96 ;
*McCartee* v. *Orphan Asylum*, 9 Cow. 437 ; *Kingsland* v. *Palmer*, 52 N. Y. 83 ; *Evarts* v. *Evarts*, 62 Barb. 577.) Plaintiff
had a right to require the deposed administrator to render an
account of his proceedings ; and this gave to the surrogate
jurisdiction over the parties and subject-matter ; and the decree
made by him, even if erroneous, is binding upon all parties,
unless reversed on appeal or set aside, and cannot be attacked
in a collateral action. (3 R. S. [6th ed.] 102, § 79 ; *Richardson* v. *West*, reported Alb. L. J., 15th May, 1880 ; *Thayer*
v. *Clark*, 48 Barb. 243 ; 41 N. Y. 620 ; *Dayton* v. *Johnson*,
69 id. 419 ; *Rose* v. *Lewis*, 3 Lans. 320 ; *Baggott* v. *Boulger,
executrix, etc.*, 2 Duer, 160 ; *Scofield* v. *Churchill*, 72 N. Y. 565 ;
*Casoni* v. *Jerome*, 58 id. 315 ; *Rowe* v. *Parsons*, 6 Hun, 338 ;
*Hunt* v. *Hunt*, 72 N. Y. 217 ; *Lange* v. *Benedict*, 73 id. 12 ;
*Roderigas, adm'r*, v. *E. R. Sav. Bank*, 63 id. 466 ; *Vanderpoel, receiver*, v. *Van Valkenberg*, 2 Seld. 190 ; *Annette* v.
*Terry*, 35 N. Y. 261.)

FOLGER, Ch. J. The objection made by the defendant to the
bond is not valid. The Revised Statutes (2 R. S. 77, § 42), do
not prescribe the tenor (Doug. 193 ; 7 Exch. 537, *561) of the
condition of the bond to be given by an administrator ; they
prescribe the substance. The bond would have been more
even with the facts and the intention of the Probate Court,
and of the parties who signed it, had it named the surrogate of
Steuben county instead of naming the surrogate of Ontario
county. But that part may be left out in reading, and still
there is enough to square with the requirement of the statute,
and to hold the administrator and his sureties. One clause in
the condition of the bond is, that the principal obligor shall
faithfully execute the trust reposed in him as administrator.
This is in the very words of the statute. It covers all his duty.
Another clause in the condition is, that he will obey all orders

of any other officer or court having jurisdiction in the premises, touching the administration of the estate committed to him. The surrogate of Steuben county is another officer having jurisdiction in the premises, and his Probate Court is another court having that jurisdiction. The requirement of the statute cited above is, that the bond be conditioned that the principal in it will obey the order of the surrogate who issued letters of administration to him. The surrogate of Steuben county did issue those letters. So that surrogate falls within the requirement of the statute, and the force of the condition as it reads in the bond. Besides that, this is not a bond taken by an officer for his own good or safety, but one taken in the course of official duty to another, and for the benefit of that other. Hence it is not open to the objections made to bonds taken by an officer to and for himself, and which need follow more closely the statutory requirement or be held as taken *colore officii*, and so void. (*Burrall* v. *Acker*, 23 Wend. 606.) In such a case as that before us, the substance is looked for more than the form, even though it be a surety that is to be held. (*Wiser* v. *Blackly*, 1 Johns. Ch. 607.) It was voluntarily executed by the principal and his sureties, and though broader in terms than those named by the statute, the obligors cannot now object to it, having had the full benefit of the proceeding in which it was given. (*Ring* v. *Gibbs*, 26 Wend. 502; 2 R. S. 556, § 33; and see *Casoni* v. *Jerome*, 58 N. Y. 315.)

The principal was bound by his bond, and his sureties with him, that he faithfully execute the trust, and obey the orders of the surrogate of Steuben county. If that surrogate has lawfully made an order that he pay over moneys, and he has not made payment, he has not only disobeyed the order, but has failed to faithfully execute the trust, and thus there has been a twofold breach of the condition of the bond. Let us then seek whether the order of the surrogate was a lawful one. It directed that the principal pay a sum of money to the plaintiff in this case. She and the administrator were the only next of kin of the intestate; and it did not appear that there were debts; indeed, from lapse of time, it was to be presumed that

there were none. The order was made on a final accounting of the principal, the administrator, had upon her application. The principal appeared before the surrogate, submitted to his jurisdiction, rendered his accounts, and it was found and decreed that after the payment of the debts of the intestate and the expenses of administration, there was due and payable to the plaintiff a sum named, as her distributive share of the estate, and it was ordered that he pay it to her. But it appears that before the proceeding was begun in which that order was made, the letters of administration to the principal had been revoked, and all his authority and right as administrator had thereupon ceased. It also appears that no one had been appointed to the office in his stead. But it also appears that the money which he was ordered to pay over had come into his hands officially, before the revocation of the letters. It is thereupon contended that the surrogate had not jurisdiction to cite the principal to account on the petition of next of kin, nor to have an accounting, nor to order him to pay money to the plaintiff.

There is the general power in the surrogate to entertain the petition of next of kin for a citation to an administrator that he account (2 R. S. 92, § 52), and to decree a payment of money to such person. (Id. 95, § 71.) Does that power cease when the letters of administration have been revoked, yet no new administrator has been appointed? The Revised Statutes provided for the revoking of letters of administration and the issuing of new letters. (2 R. S. 78, §§ 44, 45.) The last clause of section 45 is that such new letters shall supersede all former and other letters of administration on the same estate. No express provision is made for a case where new letters are not issued; nor is it declared what is the effect of that omission upon the estate or the administrator. So, also, 2 R. S. 85, §§ 17, 18, 19, 20, provide for a revocation of the letters and the issuing of new letters, and with a like provision for the new superseding the old (§ 20); and also providing that the new letters should deprive the former administrator of all power over the estate of the deceased (§ 20), without any express provision for an omission to issue new letters. The Revised Stat-

utes (2 R. S. 95, §§ 68, 69) provide that when the former letters shall be revoked or superseded, the administrator may be cited to account before the surrogate, at the instance of his successor, in the same manner as is provided for a creditor; but in such case the surrogate cannot make a decree for payment and distribution. (2 R. S. 95, § 71.) The Laws of 1837 (chap. 460, pp. 524, 529, § 29 *et seq.*) provide for a releasing of the sureties of an administrator on account of his future acts or defaults; and in case the administrator does not give new sureties, the surrogate may revoke the letters to him, and thereupon his authorities and rights as an administrator shall cease. It is to be observed that his liabilities as administrator do not by the terms of the statute cease, nor the liabilities of his sureties for his former acts, defaults or misconduct. (Id., §§ 31, 32.) It is also provided by the same act (id. 531, § 36), that in the cases of revocation provided for, the surrogate has the same jurisdiction to require him to render an account of his proceedings as is conferred by the third article of title 3, chapter 6 of part 2 of the Revised Statutes; and it is required of the new administrator that he shall within a reasonable time apply for an account, and if he neglect, the other person mentioned in that article may apply; which other person is a creditor, legatee or next of kin, having a demand against the personal estate of the deceased. (2 R. S. 92, § 52.) It is to be noticed that this act gives jurisdiction to the surrogate, not only the same which he has by sections 68, 69, *supra,* but the same that he has by the whole of article third, which includes section 52, *supra;* and without the restriction in section 71, *supra,* which by its terms is confined to a proceeding under sections 68, 69, *supra.* Chapter 229, Laws of 1862, pp. 417, 419, section 10, amends section 36, *supra,* but in nothing affecting this case.

The claim of the defendant, that these provisions of the Revised Statutes and the Session Laws do not authorize the surrogate to decree a payment over in such case, rests upon 2 R. S. 95, section 71; and he cites *Annett* v. *Kerr* (2 Robt. 556). We have seen that section 71 of the Revised Statutes, *supra,* keeps from the surrogate the power to decree payment and

distribution in the case of an accounting under sections 68 and 69, *supra*, of those statutes. But we have also seen that the proceeding by which those letters were revoked was not taken under the Revised Statutes, but under the Laws of 1837, *supra*. And the act of 1837 gives to the surrogate the same jurisdiction in cases arising under it, as he has by article 3 of the Revised Statutes. Now by that article he has, in the case of a citation, under the 52d section, the power to decree payment and distribution to creditors and next of kin. When, then, the act of 1837 gives the same jurisdiction in the case of a removed administrator that that article gives and allows it to be exercised on the application of a creditor or next of kin, why does it not give power to take an application under section 52, and in such case, to decree. payment and distribution? But we are not compelled to rest upon the provisions of the act of 1837. Without it we should hold that in this case the surrogate had power to decree distribution. It is conceded, at pages 566, 568, in the case cited by the appellant, that the provisions of the Revised Statutes for a final accounting (§ 52, *supra*) are still operative, though there has been a revocation of the letters. Indeed, it is expressly said there that " all parties interested in the estate as creditors, legatees or next of kin have a right to summon a removed administrator to account, and procure a decree against him, which, if unsatisfied, could be enforced in a suit on the bond;" and again it is said, that the account rendered there by the removed administrator might have been a final one if it had been made on his application. (Id. 569.) And if there has not been a new administrator appointed, so that the assets may be ordered into his hands, and eighteen months have elapsed from the issuing of letters (§ 52, *supra*), we see not why the surrogate has not jurisdiction, on application from the next of kin, to cite the removed administrator to account, and if it so be that there may be a final account and settlement of the estate, why he may not decree a distribution and a payment over of the distributive shares. The statutes in general terms give to the surrogate the authority to cite an administrator to an account, after the lapse of eighteen months

from the time of his appointment. (2 R. S. 92, § 52.) The section says an administrator, but it does not mean to confine the power so that it may not be exercised save against one who is actually in the office of administrator. Thus it has been held, that by virtue of the 52d section, *supra*, the surrogate has power to cite the executors of a deceased executor to account for the doings of their testator, as executor of his testator (*Dakin* v. *Deming*, 6 Paige, 95), which is practically an accounting by the deceased executor. And we have called attention to the fact that the Law of 1837, while it took from an administrator, when his letters are revoked, his power and authority, left his liability for past acts or omissions. To whom was he liable? Not to the new administrator, for the surrogate was debarred from decreeing payment to him by the removed administrator, until the passage of the act of 1865. (Chap. 733, Laws of 1865, p. 1455.) He must have been liable to some one. It may be said that he was liable in a suit in equity to any one having such an interest in the estate as would maintain the suit. But the revisers (5 Edm. Stat. 382) seem to have meant that the provision for an accounting before the surrogate should be a substitute for a bill in chancery to that end. The Law of 1865 does not interfere therewith. It does not expressly repeal any section of the Revised Statutes, nor is it so repugnant to any as to repeal it by implication. It might have meant to provide for an especial case, and to supply an omission in the law, and to give power to a surrogate to decree payment and delivery, by an administrator whose letters had been revoked, to his successor in office, when there was a successor. It did not mean to take from the surrogate any power then belonging to him to decree an accounting and payment to creditors and next of kin. The act of 1837 had given to the surrogate the same power that article 3 of the Revised Statutes had given; but as that article restrained from making distribution in the case of a citation on the application of the new administrator, this act of 1865 was needed to empower a decree for payment and delivery to him, and so to make the law complete. He who has been administrator, if he is living, is liable to account,

though he has been removed. As long as he has assets of the estate in his hands, or as long as he is liable for assets that have come into his hands, he is liable to the process from the surrogate calling him to an account. In *Everts* v. *Everts* (62 Barb. 577), it was held that it was competent for an executor, the letters testamentary to whom had been revoked, to settle his accounts before the surrogate. The case cited has not, as we find, been reversed or questioned. There the citation to account was issued on the application of an original co-executor. And in *Casoni* v. *Jerome* (*supra*), it was held that where an administrator had begun proceedings in surrogates' courts for a final accounting, and pending them the letters of administration were revoked, that the surrogate had power to proceed and make a final decree of amount held, and for the distribution of it. In the case cited *supra* (*Annett* v. *Kerr*), it was held that the provisions of the 68th and 69th sections did not empower the surrogate to order the removed administrator to hand over the assets of the estate to his successor. It seems from the act (chap. 733 of 1865) above cited, that the legislature so thought. If that was so, then if the surrogate had no power to cite the removed administrator to an accounting under the 92d section, and to order payment and distribution under the 71st section, there was not power in that officer to compel an administrator, letters to whom had been revoked, to pay over to any one. We do not think that the legislature intended this, but meant that the power given by the 52d and 71st sections could be used by the surrogate, unless there had been action taken under the 68th and 69th sections, when the express exception in the 71st section took away the power to distribute.

Some of the court think that if we are wrong in this, there is another view of the case to be taken. When persons become sureties upon the bond of an administrator, they make themselves privy to the proceedings against their principal, and when he, without fraud or collusion, is concluded, they are concluded also. (*Casoni* v. *Jerome, supra.*) Now on the application in behalf of the plaintiff as next of kin, the surrogate of Steuben got jurisdiction to cite the principal to an account, and this

by the express provision of the Law of 1837, leaving out any power from the Revised Statutes. The principal submitted to the jurisdiction, making and filing his official account pursuant to a citation. Thus the surrogate got jurisdiction of the person of the principal. He had power to make a decree for an accounting and to take and state the account. He went further and made an order that the principal pay and distribute. It was not an order made by fraud or collusion. It was made in a case and against one whereof he had jurisdiction. Granting it was erroneous and might have been reversed on appeal from it, it was not an unlawful order; it was not absolutely void. The condition of the defendant's bond is to obey all orders. Here was an order that bound the principal. It bound his sureties also. (*Scofield* v. *Churchill*, 72 N. Y. 565.)

The order of the General Term should· be affirmed, and judgment absolute given for the respondent on the stipulation of the appellant.

All concur.

Order affirmed and judgment accordingly.