ELOISE A. CLOSE, Respondent, *v.* THE FARMERS' LOAN AND TRUST COMPANY, as Executor of WILLIAM F. NISBET, Deceased, Appellant, Impleaded with Others.

Testamentary trusts — sufficiency and construction of express trust — action upon bond of substituted trustee.

The general rule is that words sufficient to constitute an express trust authorized by statute should be given that effect unless it would violate some statutory provision.

A testator, after making certain other provisions, gave one-third of the residue of his property to his wife for life or so long as she should remain his widow. At her death or marriage it was to be divided between his six children. Of the remaining two-thirds he gave one-

sixth to each of his three sons. These gifts were unqualified. He gave the remaining three-sixths to his three daughters by uniform provisions. The provision for the mother of plaintiff is as follows: " To my daughter Marie Ema Seward I also give one other equal sixth part of said remaining two-thirds, the same also to be invested by my executors for her benefit in such securities as they may elect, and the interest arising therefrom to be paid to her semi-annually, and in the event of the said Marie Ema dying without issue, then the proceeds of such share to be divided among her brothers and sisters share and share alike." *Held,* that the testator intended to create, and clothed his executors with the power and duty of executing an express trust for the benefit of his daughters, and in view of the presumption against intestacy and disherison, and of the circumstances surrounding the testator when he made his will, the necessary conclusion is that he intended to give the remainder to the children of his daughter Marie Ema Seward if she died " with issue," and they thus took under the will.

Upon the death and resignation of the executors appointed by the will, the Supreme Court appointed Henry C. Seward, now deceased, trustee " of said Marie Ema Seward under the last will and testament of Anthony J. Allaire, deceased." The trustee was required to give a bond before entering upon the performance of his duties and he, together with William F. Nisbet and another, gave a bond for the faithful performance of the trust reposed in him, which ran to Marie Ema Seward and her heirs, executors, administrators or assigns. Plaintiff, one of the children of Marie Ema Seward, brought this action against the sureties on the bond. *Held,* that, although the bond ran to the person who was primarily interested, it also protected those who came after her and had a right under the will to call the trustee to account. It should be considered as running to the people for the benefit of all concerned in accordance with the obvious intention of the obligors. Hence, plaintiff is entitled to maintain this action.

*Close* v. *Farmers' Loan & Trust Co.,* 121 App. Div. 528, affirmed.

(Argued February 19, 1909; decided March 23, 1909.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 18, 1907, reversing a judgment in favor of defendants entered upon the report of a referee and granting a new trial.

This action was brought against the sureties on a bond given under the following circumstances: Anthony J. Allaire, the maternal grandfather of the plaintiff, died on the 13th of May, 1859, leaving a last will and testament dated December

5th, 1857, which was duly admitted to probate by the surrogate of New York county on the 27th of May, 1859. He left three daughters, all married, and three sons. After providing for the payment of debts and funeral expenses, he gave to his wife his dwelling house, the contents thereof and one-third of his other property, real and personal, for life or so long as she should remain his widow. Upon her death or marriage he directed that the property so given to her for life should be sold and the proceeds arising therefrom divided among his children, share and share alike. The remaining two-thirds of his real and personal property he directed should be divided into six equal parts " and then distributed . among my (his) children in the manner following." By three separate clauses he thereupon gave to each son " one equal sixth part of said remaining two-thirds." These gifts were unqualified. He also made uniform provisions for his daughters by three independent clauses, the sixth of which, relating to the mother of the plaintiff, is as follows: " To my daughter Marie Ema Seward I also give one other equal sixth part of said remaining two-thirds, the same also to be invested by my executors for her benefit in such securities as they may elect, and the interest arising therefrom to be paid to her semi-annually, and in the event of the said Marie Ema dying without issue, then the proceeds of such share to be divided among her brothers and sisters share and share alike."

By the seventh clause he bequeathed to his executors the sum of $500 in trust, to be invested in such securities as they should elect, " the same to remain as a perpetual fund and the interest arising therefrom to be expended in keeping in proper protection and repair" the family burying ground. He appointed his " trusty friends Joseph M. Price and James Rowe   *   *   *   the executors of this my last will and testament."

The executors qualified but subsequently one of them died and Washington A. Hall was appointed trustee in his place, while the other resigned and on the first of April, 1871, after a report of the facts by a referee, the Supreme Court at

Special Term appointed Henry C. Seward " trustee of said Marie Ema Seward under the last will and testament of Anthony J. Allaire  *  *  *  deceased, in place of James Rowe resigned and Washington A. Hall declining to qualify." The order further provided "that before entering upon his duties as such trustee the said Henry C. Seward give as security for the faithful performance of his duties as such trustee a bond in the sum of $30,000 with sureties to be approved as to manner and form of execution and sufficiency by one of the justices of this court."

A bond in the penal sum of $30,000 was given accordingly by Henry C. Seward, William F. Nisbet and Nathaniel Cheney running to " Marie Ema Seward, wife of Henry C. Seward," and her " respective heirs, executors, administrators or assigns," which, after reciting said order, contained the following condition : " That if the above bounden Henry C. Seward shall faithfully perform the trust reposed in him as such trustee and shall pay over, invest and account for all moneys that shall be received by him according to the conditions of said will and the orders of any court having authority to give directions in the premises, and shall observe the orders and directions of the court in relation to such trust, then the above obligation to be void, otherwise to remain in full force and effect."

Said Henry C. Seward died on the 28th of March, 1896, a resident of the state of New Jersey, and "no administration upon his estate, original or ancillary, has been had or applied for within the State of New York," and no trustee has been appointed in his place.    Marie Ema Seward died on the 20th of June, 1896, leaving her surviving as her only issue the plaintiff and the defendant Wils A. Seward, who was made a party defendant because he refused to join as plaintiff.    Her will contained the following clause : " Fourth. As to the property in which I have an interest under the will of my late father, I hereby confirm the provisions of his will in regard thereto and it is to be disposed of after my decease as in his will provided."

This action was brought for an accounting and for the recovery by the plaintiff on said bond of " one-half the amount for which the said Henry C. Seward was liable at the time of his death."

The referee before whom the action was tried, after finding the foregoing facts among others, found as conclusions of law that Anthony J. Allaire by the sixth clause of his will gave " to his said daughter a defeasible fee estate in said one-sixth of two-thirds  *  *  *; " that " the testator did not intend to create and did not create, a trust, or vest in his executors any estate in said share, but intended to confer and did confer upon his executors merely a power in trust to invest said share and receive and pay over the income thereof;  *  *  * that it was not the intention of the testator that the plaintiff should take and she did not take under said will any right, title or interest whatever by implication or otherwise in said share, and that the obligation of the sureties on the bond, if any, was to Mrs. Marie Ema Seward, and no one could enforce that obligation but Mrs. Seward or her personal representatives."   The complaint was dismissed on the merits, with costs.

Upon appeal to the Appellate Division the judgment entered upon the report of the referee was reversed, all the judges concurring, on the ground that the testator by the sixth clause of his will created an express trust to receive and invest the fund and pay the income to his daughter, Mrs. Seward, for life ; that upon her death the legal title was in the trustees, whose duty it was to account to the plaintiff and her brother and turn the property over to them.   The defendant Nisbet having died pending the appeal to the Appellate Division, the Farmers' Loan and Trust Company as executor was substituted, and as such it appealed to this court, giving the usual stipulation for judgment absolute if the order of reversal should be affirmed.

*James F. Horan* for appellant.   The 6th clause of the will of Anthony J. Allaire created no trust.   No gift was made

thereunder to the issue of Marie Ema Seward. By that clause an estate in fee was given to her, defeasible only in the event of her dying without issue, and the Allaire executors took only a power in trust to invest said share of ·the estate and to receive and pay over the income thereof. (*Matter of Disney,* 190 N. Y. 128; *Matter of Miller,* 161 N. Y. 71; *Nellis* v. *Nellis,* 99 N. Y. 505; *Tyson* v. *Blake,* 22 N. Y. 558; *Freeman* v. *Coit,* 96 N. Y. 63; *Burns* v. *Stillwell,* 103 N. Y. 453; *Goodwin* v. *Coddington,* 154 N. Y. 283; *Herzog* v. *T. G. & T. Co.,* 177 N. Y. 86; *Post* v. *Hover,* 33 N. Y. 593; *Leggett* v. *Stevens,* 185 N. Y. 70.) The plaintiff cannot sue upon the bond because the obligation of the sureties on the bond, if any, was solely to Marie Ema Seward, and no one could enforce that obligation against the sureties except herself or her personal representatives. (*N. M. Assn.* v. *Conkling,* 90 N. Y. 116; *Smith* v. *Malleson,* 148 N. Y. 241; *Stratton* v. *C. T., S. D. & S. Co.,* 86 App. Div. 551; *French* v. *Dauchy,* 134 N. Y. 543; *F. L. & T. Co.* v. *Pendleton,* 179 N. Y. 486.)

*Theodore H. Silkman* for respondent. An express trust was created by the 6th clause of the will for the benefit of testator's daughter, Marie Ema Seward, and the legal title to the trust estate was in the executors as trustees. (*Morse* v. *Morse,* 85 N. Y. 53; *Marx* v. *McGlynn,* 88 N. Y. 357; *Ward* v. *Ward,* 105 N. Y. 68; *Tobias* v. *Ketcham,* 32 N. Y. 319; *Matter of Straut,* 126 N. Y. 201; *Brewster* v. *Striker,* 2 N. Y. 19; *Striker* v. *Mott,* 28 N. Y. 82; *Smith* v. *Scholtz,* 68 N. Y. 41.) The 6th clause of the will contained a valid gift by implication of the remainder to the issue of Marie Ema Seward. (*Bentley* v. *Kaufman,* 12 Phila. 435; *Still* v. *Spear,* 3 Grant Cas. 307; *Matter of Moore,* 152 N. Y. 602; *Matter of Vowers,* 113 N. Y. 569; *Goodright* v. *Hoskins,* 9 East, 306; *Nellis* v. *Nellis,* 99 N. Y. 505; *Tyson* v. *Blake,* 22 N. Y. 558; *Ramsay* v. *De Reamer,* 65 Hun, 212; *Whitney* v. *Whitney,* 63 Hun, 59; *Sturges* v. *Cargill,* 1 Sandf. Ch. 318.) The fact that the bond runs to Marie Ema Seward, her

7

respective heirs, executors, administrators or assigns, instead of to the People of the state of New York can avail the surety nothing. (*Wiser* v. *Blachly*, 1 Johns. Ch. 607; *Carl* v. *Meyer*, 51 App. Div. 5; *Stratton* v. *C. T. Co.*, 86 App. Div. 551.)

Vann, J. The main questions presented by this appeal spring from the sixth clause of the testator's will, which for convenience we here repeat : " *Sixth.* To my daughter Marie Ema Seward I also give one other equal sixth part of said remaining two-thirds, the same also to be invested by my executors for her benefit in such securities as they may elect, and the interest arising therefrom to be paid to her semi-annually, and in the event of the said Marie Ema dying without issue, then the proceeds of said share to be divided among her brothers and sisters share and share alike."

The effort to discover the meaning of that sentence led to a serious difference of opinion in the courts below and has caused us also to divide in judgment. While the clause begins with a gift absolute in form, it is clear that the testator meant something less. The gifts to his sons were absolute throughout, and as to one-third of his estate, to his daughters also, but their interests in the remaining two-thirds of his property were subject to the restriction that they should have the income only during their lives. The purpose of the testator in imposing this restriction may furnish a clue to the meaning of the troublesome clause. What was it? No object is suggested by the surrounding circumstances or the context, except the desire to protect and preserve the property, so that his daughters could not spend or waste it. The testator wished them to have an income as long as they lived and, hence, some provision to keep the principal intact was necessary, so that they could neither give it to their husbands nor dispose of it in any way. A defeasible estate can be transferred, but a trust estate cannot and, hence, complete protection could be afforded only by a trust. A permanent annual income for life could be furnished, with certainty, in

no other way.   A defeasible fee with a power in trust might
result in the loss of all, while a trust committed to honest
and efficient men, and it is conceded that the "trusty friends"
who were nominated as executors were such, was the most
effective method to make the daughters comfortable for life.

What did the testator do?   He provided that his executors
should invest the share of each daughter "for her benefit
in such securities as they" might elect and pay over to her
semi-annually "the interest arising therefrom."   He thus
clothed his executors with the power and duty of execut-
ing an express trust, as authorized by law.   He did not call
them trustees, nor term their position a trust, but neither is
necessary to constitute a trust, provided the powers and duties
are those of a trustee.   He did not expressly give them title
to the property, but that passes by implication when involved
in the general scheme and intent.   Thus, in a recent case the
gift was absolute in form to four persons, one of whom was
John B. Mee, a brother of the testator, to be equally divided
between them share and share alike, "but," continued the
testator, "I hereby direct that the share due my brother John
B. Mee be invested by my executor for his benefit during his
natural life and for the benefit of his wife and his issue after
his death."   It was held that the clause quoted created a
valid express trust to collect the rents and profits for the
benefit of the brother during his life with an absolute
remainder to his wife and children.   (*Mee* v. *Gordon*, 187
N. Y. 400, 403.)

Other authorities might be cited to the same effect, and, it
must be conceded, some which hold that provisions similar to
those in question create a power in trust, but the general rule
is that words sufficient to constitute an express trust author-
ized by statute should be given that effect, unless it would
violate some statutory provision, such as the prohibition against
the suspension of absolute ownership, when, if possible, they
are held to create a power in trust, in order that the object of
the testator may not be wholly defeated.   (*Steinway* v.
*Steinway*, 163 N. Y. 183, 200, 201.)

The intention of a testator, when within the law, must control, and we think that Mr. Allaire intended to create an express trust for the benefit of his daughters, so as to preserve the property during their lives and give them a snug annual income therefrom.

We now reach the question as to what disposition was made of the remainder upon the death of the daughters. Here we are aided by two presumptions of law, each founded on long experience and well settled, the presumption against intestacy, and the presumption against disherison. Read in the light of these presumptions, what did the testator mean when he directed that if his daughter, Mrs. Seward, should die " without issue " the remainder should be divided among her brothers and sisters, without making any express provision for the contingency if she should die leaving issue? As he did not give the fee or the principal, for the clause in question covered both real and personal property, to his daughter, and he gave the remainder to her brothers and sisters only if she died " without issue," the necessary conclusion, in view of the presumptions mentioned above and the circumstances surrounding him when he made his will, is that he intended to give the remainder to her children, if she died " with issue." They thus took under the will by an implication which has strong support in the adjudged cases. We cite a few, out of many that might be cited, to sustain this proposition. (*Matter of Moore*, 152 N. Y. 602, 608; *Masterson* v. *Townshend*, 123 N. Y. 458, 462; *Matter of Vowers*, 113 N. Y. 569, 571; *Low* v. *Harmony*, 72 N. Y. 408, 414; *Prindle* v. *Beveridge*, 7 Lans. 225; 58 N. Y. 592. See, also, *Whitney* v. *Whitney*, 63 Hun, 59, and the cases reviewed by Judge Martin, commencing at page 78.)

Finally, it is insisted by the appellants that the plaintiff can maintain no action against the sureties upon the bond in question because it ran to her mother only and she is, herself, a stranger to it.

The origin of the bond was an order of the Supreme Court appointing a trustee " of said Marie Ema Seward under the

last will and testament of Anthony J. Allaire, deceased."
The person so appointed was directed by the said order
" before entering upon his duties as such trustee " to " give
as security for the faithful performance of his duties as such
trustee " a bond in the penal sum named, with sufficient sure-
ties.  The order made no provision as to the name of the
obligee.  The bond recited the order and substantially fol-
lowed it.  The sureties covenanted that their principal should
" faithfully perform the trust reposed in him as such trustee
and duly pay over, invest and account for all moneys that
should be received by him according to the conditions of said
will and the orders of any court having authority to give
directions in the premises and observe the orders and direc-
tions of the court in relation to such trust."  We find no
statute, in force when this bond was given, and no rule of
the court, prescribing to whom such a bond should run.  We
do not regard the name of the obligee as important, because
whatever name was inserted the clear intention was to secure
all persons whom the court by its order sought to protect.  In
fact it was for the benefit and protection of every person who
had a direct, pecuniary interest in " the faithful performance
by the principal of his duties as such trustee " under said
will.  It might well be that all of such persons were not in
being when the bond was given, yet they would not lose the
benefit of the protection provided by the court because they
were not designated as obligees.  All the real parties in inter-
est frequently cannot be determined until the condition of the
bond is broken and, hence, the designation of the obligee, at
least in the absence of a statute or a rule of the court, must
be nominal, the substance and intention being that the real
obligees, whether named or not, are the persons entitled to pro-
tection against the default of the principal.  (*Town of Solon*
v. *Williamsburgh Sav. Bank*, 114 N. Y. 122, 134; *Gerould*
v. *Wilson*, 81 N. Y. 573, 578; *Bernards Township* v. *Steb-
bins*, 109 U. S. 341, 349.)  The bond ran to the one who was
primarily interested, but it also protected those who came after
her and had the right under the will to call on the trustee to

account. In a case quite analogous in principle, where a statute (L. 1802, ch. 110) required the bond given in behalf of a guardian to be " executed to such infant," but the bond involved ran to the People, Chancellor Kent held the surety liable and decreed the bond " valid as a security to the like extent as if it had been taken by the Surrogate according to the act." ( *Wiser* v. *Blachly*, 1 Johns. Ch. 607, 610 ; 2 id. 488, 491.)

This case was followed by those last cited. In discussing the subject the chancellor said : " Whether the surety is to be holden, though the bond was taken in the name of the people instead of in the name of the infant, I have no difficulty in saying, that it is within the ordinary jurisdiction of this court to correct such a mistake, by holding the party according to his original intention, and to consider the bond as taken to the infant." (1 Johns. Ch. 609.) Conversely, as we think, the bond in question should be considered as running to the People for the benefit of all concerned, in accordance with the obvious intention of the obligors.

The order appealed from should be affirmed and judgment absolute rendered against the appellant on the stipulation, with costs in all courts.

HAIGHT, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur ; CULLEN, Ch. J., and EDWARD T. BARTLETT, J., dissent.

Order affirmed, etc. _____