MARION M. JACKSON, EXECUTOR, ESTATE OF MARY V. EAGAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29452.   Promulgated January 20, 1930.

*Robert C. Alston, Esq.,* for the petitioner.
*Paul Peyton, Esq.,* for the respondent.

## OPINION.

SMITH: Two errors are alleged in the petition filed in this proceeding—(1) that the Commissioner has disallowed the deduction of $33,897.07 of the $42,780.64 claimed as a deduction for executor's commissions, and (2) that he has disallowed the deduction of $408,275.25 representing the value of a bequest of the income of the estate payable to three charitable institutions.

In the estate-tax return the petitioner claimed the deduction of $42,780.64 for executor's commissions. The respondent has allowed the deduction of only $8,883.57 which he represents was the amount actually paid for executor's commissions up to May 9, 1927, the date of the mailing of the deficiency notice. He claims that the amount of $42,780.64 claimed by the petitioner is the amount of executor's commissions which would have been payable had the whole estate

been reduced to cash and distributed in a period ordinarily required to administer an estate. He submits, however, that under the provisions of the will the executor is constituted a trustee in respect of the residual estate and that the expenses connected with the administration of the residual estate are in reality expenses incurred in the management of a trust estate of which the executor is acting as trustee.

It is the contention of the petitioner, on the other hand, that the amount claimed in the return is not in excess of a reasonable amount; that it is equal to 5 per cent of the value of the corpus of the estate; that that is the ordinary commission of 2½ per cent on all sums of money received and 2½ per cent on all sums of money paid out, which commissions are authorized by the statutes of Georgia; that this amount takes no account of the income of the estate; that executors are entitled to at least 2½ per cent on income paid out, except that paid to themselves; that the ordinary may allow 3 per cent on the value of the property for delivering it over in kind and that the executor is also entitled to extraordinary compensation in certain instances to be fixed by the ordinary.

The evidence shows that the executor had received commissions to June 18, 1929 (including $2,000 for extraordinary compensation connected with certain litigation with reference to the will), of $16,396.41; that in addition he had paid the following amounts which have not been allowed as deductions by the respondent:

| | |
|---|---:|
| Court costs | $154. 89 |
| Attorneys' fees | 4, 200. 00 |
| Surety-bond premium | 700. 00 |
| Total | 5, 054. 89 |

that he has also paid additional premiums on his surety bond not included in the proceeding; and that an additional amount of $1,500 to $2,000 will probably be paid as attorneys' fees. Petitioner also submits that if the income of the estate is $32,000 a year for 30 years, the aggregate gross income over that period will be $960,000; that 5 per cent of that amount is $38,000; and that " if this income were added to the value of the estate and 5% upon this aggregate amount were taken, the commissions would amount to Eighty-nine Thousand ($89,000) Dollars."

The applicable provision of the taxing statute is section 303 (a) (1) of the Revenue Act of 1924, which permits an estate to deduct from gross income:

Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for a fair consideration in

money or money's worth, losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, or from theft, when such losses are not compensated for by insurance or otherwise, and such amounts reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or any estate, succession, legacy, or inheritance taxes.

The Commissioner's Regulations 68, relating to estate tax under the Revenue Act of 1924, recognizes that an executor may also act as a trustee and provides that expenses incurred by an executor as trustee in the administration of the estate may not be deducted from the gross estate. Article 32, Regulations 68, is as follows:

*Administration expenses.*—The amounts deductible from the gross estate as " administration expenses " are such expenses as are actually and necessarily incurred in the administration of the estate; that is, in the collection of assets, payment of debts, and distribution among the persons entitled. The expenses contemplated in the law are such only as attend the settlement of an estate by the legal representative preliminary to the transfer of the property to individual beneficiaries or to a trustee, whether such trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devises, may not be taken as deductions. Administration expenses include (1) executor's commissions; (2) attorney's fees; (3) miscellaneous expenses. Each of these classes is considered separately in Articles 33 to 35, inclusive.

Article 33, Regulations 68, relating to executor's commissions, further provides that:

*Executor's commissions.*—The executor or administrator, in filing the return, may deduct his commissions in such an amount as has actually been paid or which at that time it is reasonably expected will be paid, but no deduction may be taken if no commissions are to be collected. Where the amount of the commissions has not been fixed by decree of the proper court, the deduction will be allowed on the final audit of the return provided: (1) That the Commissioner is reasonably satisfied that the commissions claimed will be paid; (2) that the amount entered as a deduction is within the amount allowable by the laws of the jurisdiction wherein the estate is being administered; and (3) that it is in accordance with the usually accepted practice in said jurisdiction in estates of similar size and character. Where the commissions claimed have not been awarded by the proper court the Commissioner on final audit may disallow the deduction in part or in whole, as the circumstances in his judgment justify, subject to such future adjustment as the facts may later require. If the deduction is allowed in advance of payment and payment is thereafter waived, it shall be the duty of the executor to notify the Commissioner and pay the tax resulting therefrom, together with interest. Executors should note that the commissions received as compensation for their services constitute taxable income and that the amounts received or receivable by them as such compensation are cross-referenced for income-tax purposes.

A bequest or devise to the executor in lieu of commissions is not deductible. Where, however, the decedent fixed by his will the compensation payable to the

executor for services to be rendered in the administration of the estate, deduction may be taken to the extent that the amount so fixed does not exceed the compensation allowable by the local law or practice.

Amounts paid as trustees' commissions do not constitute expenses of administration and are not deductible, whether received by the executor acting in the capacity of a trustee or by a separate trustee as such.

It will be noted that the statute allows the deduction from the gross estate of " such amount for funeral expenses, administration expenses * * * as are allowed by the laws of the jurisdiction, * * * under which the estate is being administered * * *." We have held that proper administration expenses actually paid or incurred, such as executors' commissions and attorneys' fees, are allowable deductions, even though they have not been allowed by order of the court having jurisdiction. *Samuel E. A. Stern*, 2 B. T. A. 102; *Estate of Jacob Voelbel*, 7 B. T. A. 276; *John A. Loetscher*, 14 B. T. A. 228; *Irving Bank-Columbia Trust Co.*, 16 B. T. A. 897.

The commissions of an administrator in Georgia are controlled by sections 4062 to 4068, both inclusive, of the Code of Georgia. These sections are as follows:

SEC. 4062. *Ordinary commissions.* As a compensation for his services, the administrator shall have a commission of two and one-half per cent. on all sums of money received by him on account of the estate (except money loaned by him and repaid to him), and a like commission on all sums paid out by him, either to debts, legacies or distributees. Such commissions are part of the expense of administration, and should be paid from the general estate, if any. If none, then to be deducted from the debt or legacy paid.

SEC. 4063. *On interest made.* If, in the course of administration, the administrator shall receive interest on money loaned by the intestate, or by himself as administrator, and shall return the same to the ordinary so as to become chargeable therewith as a part of the corpus of the estate, he shall be entitled to ten per cent. additional commission on all such amounts of interest made.

SEC. 4064. *Has no commissions, when.* The administrator is entitled to no commissions on debts, legacies, or distributive shares paid to himself; and if there are more administrators than one, the division of the commissions allowed them, among themselves, shall be according to the services rendered by each.

SEC. 4065. *None for delivering property in kind.* No commissions shall be paid to any administrator or executor for delivering over any property in kind; but the ordinary may allow reasonable compensation for such service, not exceeding three per cent. on the appraised value. If, however, land is worked by any trustee for the benefit of the parties in interest, the ordinary may, in his discretion, allow to such trustee additional compensation for such services, in no case exceeding ten per cent, of the annual income of the property so managed.

SEC. 4066. *Traveling and other expenses.* An administrator, in the discharge of his duty, required to travel out of his county shall be allowed the amounts of his actual disbursements, to be ascertained by his own statements under oath. The ordinary may also allow him a reasonable compensation for the

time devoted to this service; Provided, under the circumstances, the ordinary adjudges such additional compensation a proper charge against the estate.

SEC. 4067. *Extra compensation.* In other cases of extraordinary services, extra compensation may be allowed by the ordinary. But in no case is the allowance of extra compensation by the ordinary conclusive upon the parties in interest.

SEC. 4068. *No fund shall pay commissions but once.* Where from any cause a trust fund shall pass through the hands of several administrators or other trustees, by reason of death, removal, resignation or otherwise of the first qualified trustee, such fund shall not be subject to diminution of charges of commissions by each successive trustee holding and receiving in the same right; but commissions for receiving the fund shall be paid to the first trustee, or his representative, and commissions for paying out shall be paid to the trustee actually disbursing the fund, and no commission shall be paid for handing over the fund to the successor of a trustee.

Commissions for an executor are the same as those for an administrator. (Sec. 3892.) *Lamar* v. *Lamar*, 118 Ga. 684; 45 S. E. 498.

The provisions of the Code of Georgia are not unlike those of most States with respect to the settlement of the estates of deceased persons. The executor shortly after he qualifies is required to give notice to debtors of his appointment as executor and creditors of the estate are given one year in which to file claims against the estate. If claims are not duly filed the creditor loses his right to recover from the estate. Any person interested as distributee or legatee may after the expiration of one year from the grant of administration cite the administrator to appear before the ordinary for the settlement of his accounts, or, if the administrator chooses, he may cite all of the distributees to be present at the settlement of his accounts by the ordinary; such settlement shall be conclusive upon the administrator and upon all the distributees who are present at the hearing. (Sec. 403.)

Under the will of the decedent the executor is given the authority and power of a trustee. The decedent by " Item ten " of her will expressly confers upon him:

* * * The authority and power to sell any part of my said estate, as he may deem best, at public or private sale, with or without notice, and without any order of court, for the purpose of paying legacies or for the purpose of changing investments or for the purpose of making a division, where a division is called for, under the terms of my will, between the legatees named therein.

The respondent's regulations specifically provide that trustees' fees may not be deducted from the gross estate. Ordinarily they are paid out of the income of the estate and not out of the corpus.

A trust may devolve upon an executor where no trustee is named in the will. The rule is stated in 40 Cyc. 1764–1765, as follows:

* * * And a trust may devolve upon the executor by implication, as where he is directed to invest or hold the property and disburse the income,

or to perform other trust duties which are beyond the scope of his duties as executor. So, if the testator, by his will, has not placed his property in trust with any other trustee than the executor, it is the province and duty of the latter to act as trustee, and he may be held as such. * * *

It has also been held that under a will giving a share of testator's estate to his daughter to be invested by executors for her benefit, the interest to be paid semiannually, and providing that on her death without issue the proceeds of the shares should be divided between her brothers and sisters, a trust was created vesting legal title in executors as trustees. *Close* v. *Farmers' Loan & Trust Co.*, 195 N. Y. 92; 87 N. E. 1005.

In Schouler on Wills, 5th ed., vol. 2, sec. 1248, the following is said in this connection:

The intent to create a trust under a will may be gathered from the scope of the instrument aside from technical words; and where consequently, the duties imposed are active so as to render the possession of the estate convenient and reasonably necessary, the executors will be deemed trustees for the performance of their duties to the same extent as though declared to be so by the most explicit language.

The respondent in his regulations has defined administration expenses as "such expenses as are actually and necessarily incurred in the administration of the estate; that is, in the collection of assets, payment of debts, and distribution among the persons entitled." (Art. 32, Reg. 68, quoted above.) This appears to us to be a reasonable regulation for the carrying out of the provisions of the estate-tax law. It is not to be presumed that Congress intended that the question of the correct tax liability of a decedent's estate should await final discharge of the executor where in effect the executor acts as trustee of the estate over a long period of years. The executor is required under section 304 of the Revenue Act of 1924, within two months after the decedent's death or within a like period after qualifying as executor, to give written notice thereof to the collector and to file with the collector within one year from the death of the decedent a return under oath in duplicate setting forth the value of the gross estate of the decedent at the time of his death and the deductions allowed under section 303, and the tax is payable one year after the decedent's death. These provisions contemplate an early determination of the tax liability. They certainly do not contemplate a determination of a liability dependent upon circumstances which may eventuate in the distant future.

Although the executor in the instant proceeding was not designated a trustee by the will of the decedent, and although the administrator of the estate was still under the jurisdiction of the ordinary at the date of the hearing in 1929, we think that from and after the date in which the accounts receivable were collected and the debts paid, the

executor was acting as trustee. Apparently this was not later than May 9, 1927, the date of the mailing of the deficiency notice. No evidence has been submitted to the contrary. All of the expenses connected with the litigation in the case of *Marion M. Jackson* v. *William Russell Eagan et al.*, referred to in our findings were paid by order of the court from the income of the estate and not as administration expenses. We are therefore of the opinion that upon the record the disallowance by the Commissioner of $33,897.07 of the executor's commissions is proper and the determination of the respondent upon this point is sustained.

In the estate-tax return petitioner claimed the deduction from the gross estate of $408,275.25 as the value of certain bequests of income to three charitable institutions. The respondent has disallowed this deduction " upon the ground that the bequests had no ascertainable value as at the date of decedent's death, and further, that the bequests were void under the laws of the State of Georgia."

The deduction was claimed under the provision of section 303 (a) (3) of the Revenue Act of 1924, which, so far as is material, provides for the deduction from the gross estate of:

The amount of all bequests, legacies, devises, or transfers, * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. * * *

Although the disallowance of the deduction of the claimed value of the bequest by the respondent was based upon the ground that they had no ascertainable value at the date of decedent's death and also that they were void under the laws of the State of Georgia, it is necessary first to consider whether the bequests are of such a character as to be a legal deduction from the gross estate in any event. The respondent contends that under the terms of the will the institutions named therein acquired no vested interest in the corpus of the residual estate; that at the most the charities acquired only a right to share in the annual income, if any, of the residual estate for a term of years; and that it is impossible to determine as of the date of the death of the decedent what amount, if any, of the annual income of the estate would be available for distribution to the various institutions. The petitioner, on the other hand, contends that the bequest to the charitable institutions is to pay over the net income to the legatees in periodical payments during a period of years and

possibly to pay both the corpus and the income to the charitable beneficiaries; that the legacy meets every requirement of a vested estate.

Remainders are either vested or contingent. A vested remainder is one limited to a certain person at a certain time, or upon the happening of a necessary event. A contingent remainder is one limited to an uncertain person or upon an event which may or may not happen. (Ga. Code, sec. 3676 (1910).)

Estate is the quantity of interest which an owner has in property. In this State it is applicable equally to realty and personalty. Any estate may be created in the latter that can be created in the former, and the rules of construction as to both shall be the same. (Ga. Code, sec. 3656.)

No question is raised in the present proceeding as to the value of the gross estate. It was $826,607.92. The value of any bequests to charitable institutions deductible under section 303 (a) (3) of the Revenue Act of 1924 is deductible from the gross estate. The evidence conclusively proves that the institutions which were entitled to the net income of the residual estate of the decedent from the date of her death to May 10, 1950, were charitable institutions within the contemplation of the taxing statute. We assume that no question could be raised that if the charitable institutions were to receive the remainder of the estate subject to a life estate the value of such remainder would be deductible from the gross estate. *Ithaca Trust Co.* v. *United States*, 279 U. S. 151. It was there held that the value of bequests in trust to charitable purposes following a life estate is deductible from decedent's gross estate, where the residuary estate was bequeathed to the testator's wife for her life with authority to use from the principal any sum " that may be necessary to suitably maintain her in as much comfort as she now enjoys," the principal that could be so used being fixed in fact, and capital all being stated in definite terms of money, and the income of the estate being more than sufficient to maintain the widow as required. It seems self-evident that, where the estate of a decedent is made up of two estates, one an estate for life or for years, and the other a remainder, the values of the two estates constitute the gross estate of the decedent. It further appears to us that, where an estate for years is given to a charitable institution, the value of that estate constituting the substance of the bequest is a legal deduction from gross income under section 303 (a) (3) of the taxing statute. The language used by the court in *Irwin* v. *Gavit*, 268 U. S. 161, is apposite here.

* * * Apart from technicalities we can perceive no distinction relevant to the question before us between a gift of the fund for life and a gift of the income from it. * * *

In the instant proceeding the respondent has made no argument that the value of the gift of the income of an estate to charitable institutions is not a legal deduction from the gross estate. Neither

has it been argued by the respondent that the bequest of the income had no value. The substance of the bequest was the right to receive the income of the net estate. If it had a value, we think it was a legal deduction from gross income.

The first objection made by the respondent to the disallowance of the deduction of any value for the bequests to charitable institutions is that they " had no ascertainable value as at the date of decedent's death." This is apparently predicated upon the provision of the will to the effect that the income of the estate might be utilized in the discretion of the executor to relieve the actual need arising through no fault of their own of two grandchildren of the decedent until William Russell Eagan should attain the age of 30 years. It is argued that it can not be determined what part of the net income, if any, of the estate in future years will be required to meet the needs of such grandchildren. The evidence is to the effect, however, that the mother of the testator's two grandchildren was in possession of an unencumbered estate of a value of $800,000, from which she was receiving a large income annually, which, in 1928, amounted to approximately $22,000; that she was able and willing to provide for her children without in any wise looking to the estate of the decedent; that she was willing and desirous that the income of the estate should be used for the purpose of supporting the charitable institutions to which she was devoted.

The respondent contends that the bequests to the charitable institutions were so contingent that the value of the bequests could not be determined. He relies upon *Humes* v. *United States*, 276 U. S. 487. In that case it was held that under section 403 of the Revenue Act of 1918, the present value of contingent bequests to charities in a will as determined by the combination and adjustment of mortality tables as to whether a 15-year-old girl would marry, or, if she did, would die without issue before the age of 30, 35, or 40, is not deductible from the gross estate in determining the value of the net estate, since neither the taxpayer nor the revenue officer could do more than guess at the value of the contingency. The court stated:

One may guess, or gamble on, or even insure against, any future event. The Solicitor General tells us that Lloyds of London will insure against having twins. But the fundamental question in the case at bar is not whether this contingent interest can be insured against or its value guessed at, but what construction shall be given to a statute. Did Congress, in providing for the determination of the net estate taxable, intend that a deduction should be made for a contingency the actual value of which cannot be determined from any known data? Neither taxpayer, nor revenue officer—even if equipped with all the aid which the actuarial art can supply—could do more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character. * * *

The facts before us in this proceeding are substantially different from those which were before the court in the above cited case. Here the charitable institutions were to receive the net income of the estate to May 10, 1950, whether William Russell Eagan were alive or dead on that date. If the amount of the annual net income of the estate from the date of the death of the decedent to May 10, 1950, can be determined, the computation of the present value at the date of the death of the decedent of the right to receive such net income of the estate presents no insuperable actuarial difficulty.

The situation in this case is not dissimilar to that which obtained in *Herron* v. *Heiner*, 24 Fed. (2d) 745. In that case the will disposed of a large estate in trust, the entire income from which was to be donated to religious, educational or charitable purposes, with the exception of certain annuities, with direction to appropriate so much of the income as was " deemed necessary and reasonable " to the support and maintenance of a brother and sister of testator who were incurably insane and in a hospital for the insane where they had been supported by testator for years. The court held:

* * * The latter provision could not be construed as giving the trustees power to appropriate the entire income of the estate for support and maintenance of such two persons and thus eliminate entirely the religious, educational, and charitable bequests, deductible under Revenue Act 1918, § 403 * * * for the purposes of estate tax, and render the entire estate taxable, but that effect must be given to the limitation of the trustees to such sums as were necessary and reasonable for support and maintenance.

See also *First National Bank of Birmingham* v. *Snead*, 24 Fed. (2d) 186; *Mercantile Trust Co., Executor*, 13 B. T. A. 85; *Ithaca Trust Co.* v. *United States, supra.*

In the light of all of the evidence in this case we think the possibility that in future years the executor of the estate acting as trustee and using any part of the income of the estate for the actual need of the two grandchildren is so remote that it may be disregarded.

The second objection of the respondent to the deduction of any amount in respect of the bequest of the income to the charitable institutions is that the bequest was void under the laws of the State of Georgia. This objection is based on section 3851 of Park's Annotated Code of Georgia, which provides:

*Charitable devises.* No person leaving a wife or child, or descendants of child, shall, by will, devise more than one third of his estate to any charitable, religious, educational, or civil institution, to the exclusion of such wife or child; and in all cases the will containing such devise shall be executed at least ninety days before the death of the testator, or such devise shall be void.

This was the point litigated in the case of *Marion M. Jackson* v. *William Russell Eagan et al.*, referred to in the findings of fact. The court entered its decree holding that the charitable institutions were entitled to take the net income of the estate. No appeal was

taken from such decision. The court did not set out in any opinion brought to our attention the reasons for so deciding; but we must assume that it found that the bequest was not in conflict with the section above referred to. In any event the bequest would not be violative of section 3851 of the Code of Georgia unless its value were in excess of one-third of decedent's estate. Although the petitioner claims that the value of the bequest was in excess of one-third of the gross estate, we think that the evidence does not support such valuation.

The computation by which the petitioner arrived at a value of $408,275.25 for the bequest of income to the charitable institutions is not shown by the record. Neither does the record show the value of the net estate of the decedent. The evidence shows that the net income of the estate from the date of decedent's death to June 1, 1929, over and above that required for meeting the executor's fees, attorneys' fees, court costs, and operating expenses of the estate was $56,233.24, of which amount $42,321.80 had been paid to the charitable institutions, leaving a balance in the hands of the executor applicable for such payments of $13,911.44. The petitioner contends in his brief that the normal income of the estate was in excess of $30,000 per annum. The gross income of the estate for the fiscal year ended June 30, 1927, was $37,107.03; for the fiscal year ended June 30, 1928 (including a refund from the Government on account of income tax erroneously collected from the estate for prior years of $2,289.79), $35,254.13; and for the fiscal period July 1, 1928, to June 18, 1929, $32,541.41. The expenses of the estate for these periods are not in evidence. We simply know that the net income of the estate available for the charitable and educational institutions from the date of the decedent's death to June 1, 1929, was $56,233.24, or at the rate of $12,638.49 per annum. The evidence indicates that in future years the charitable institutions might expect to get as much from the estate annually as accrued to them annually from the date of the decedent's death to the date of hearing; in other words, that the net income of the estate accruing to the use of the charitable institutions would average as much as $12,638.49 per annum to May 10, 1950.

The present worth at the date of the death of the decedent of the right to receive that amount of money per annum, computed on a 4 per cent interest table (authorized by article 13 of Regulations 68), was $199,343.81. We therefore determine this amount to be the value of the bequests to charity and that such amount is a legal deduction from the gross estate in the determination of the net estate and of the tax liability involved in this proceeding.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Murdock, dissenting: I dissent from that part of the prevailing opinion and decision in this case which determines a value of the bequest to charity for the purpose of deducting the amount from the gross estate. In my opinion, it is impossible to determine the value of the bequest to charity at the time of the decedent's death for the purpose of this deduction.

Sternhagen agrees with this dissent.