JOHN A. LOETSCHER ET AL., EXECUTORS OF CHRISTIAN LOETSCHER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14325. Promulgated November 15, 1928.

*F. W. McReynolds, Esq.*, for the petitioner.
*Frank Horner, Esq.*, for the respondent.

OPINION.

PHILLIPS: The principal question involved in this proceeding is whether the gifts made by decedent to his children in January, 1921, were made in contemplation of death. Section 402 (c), Revenue Act of 1921. It is provided by the statute that any gift of a material part of the property of a decedent within two years of his death shall, unless shown to the contrary, be deemed to have been made in contemplation of death. By reason of this statutory provision, as well as the provisions of our rules of practice, the burden of proof rests on the petitioners.

The principal witness for petitioners was the physician who had attended the decedent for some months prior to his death. He testified that he had first been called in consultation with another physician in December, 1920, and that sometime in 1921 he had become decedent's regular physician. Upon this basis he proceeded to state his recollection of decedent's condition at various times. His recollection was indefinite and his testimony conflicting as to the date when symptoms of Bright's disease appeared. Other witnesses were called, from whose testimony it appeared that this physician had taken charge of the treatment of decedent as early as June, 1920. The physician was recalled as a witness. In the meantime he had found additional records in his office which fixed the date of the

consultation as February 21, 1920, rather than as December, 1920, as his first testimony had stated. These records also showed that this physician was frequently calling upon the decedent beginning in June, 1920. The frequency of the calls varied, 12 having been made from June 12 to 28, inclusive, 15 during July, 7 during August, 1 during September, 7 during October, 3 during November and 2 during December, 1920. On the basis of these records the physician then testified that his earlier testimony was erroneous and that he was unable to recall the condition of the decedent during the period from June to December, 1920. His testimony is consequently of little help to us in determining the physical condition of the decedent at the time of his death. It appears from the testimony of two nurses, however, that after some time in June, 1920, the decedent was in very poor health. At certain times he was confined to his home, at other times he went about on his lawn and in his gardens, or was driven about the city in his automobile. Such excursions were preceded or followed by a rest period. It is not clear whether, prior to the gift in question, the ailment of which decedent died had developed. The probabilities are that it had, or was feared, for frequent urinal tests were being made at least as early as December, 1920. Without discussing in further detail the evidence with respect to his physical condition, it might be observed that it leads to the conclusion that the decedent had reason to believe that death was to be expected in the near future, although there is nothing which would indicate that at any time he expected it from day to day.

Petitioners rely upon testimony that decedent was cheerful and never spoke of the possibility of his death. The testimony pictures decedent as a man of deep religious faith, studious, reserved and philosophical. His actions impress us as those which might be expected of such a person. His affairs are placed in order by making suitable provision for his children, reserving sufficient property to care for himself and his wife, without disturbing anyone with his own thought of his approaching end.

The petitioners point out that at stated times decedent had made other gifts to his children and that reasons existed for the making of the gifts in question. We do not understand that it is necessary that contemplation of death be the sole cause of the gift; it is sufficient to subject the property to tax if this was the motivating cause. The amounts of the gifts increased as the health of the petitioner became impaired and the gifts in question were the largest he had made at any time. They were approximately one quarter of his entire estate. Good reason for the gifts may have existed; we believe, however, that the evidence supports the statutory presumption that contemplation of death was the motivating cause for such substantial gifts at the time in question.

In *Spencer Borden, Jr., Executor*, 6 B. T. A. 255, we set out what we conceived to be the meaning of the phrase "in contemplation of death." We have deemed it unnecessary to repeat or enlarge upon what we said there in that regard.

It is urged that the gifts in question may not be subjected to tax under the Revenue Act of 1921, as they were made prior to the passage of that Act. The language of the Act expressly states that gifts made before the passage of the Act are subject to the tax and liability could only be escaped on the ground that such provision is unconstitutional. Petitioners urge that such was the decision in *Nichols* v. *Coolidge*, 274 U. S. 531; 6 Am. Fed. Tax Rep. 710. There the court was concerned with the attempt to tax a gift made many years before the enactment of the taxing statute, not in contemplation of death, but surrounded by such conditions that it took effect in possession at death. The court expressly refused to pass upon the situation where a gift was made in contemplation of death. The motion of the petitioners, made at the hearing, for judgment upon the pleadings upon the authority of that decision, is denied.

The Commissioner refused to allow any deduction for executors' commissions on the ground that they had not yet been paid or allowed by the court. We had this same question before us in *Samuel E. A. Stern*, 2 B. T. A. 102, where, after quoting the statute we said:

It does not appear from the above that the amounts are required either to have been allowed by actual order of the court or to have been paid, but merely that they shall be such charges as are proper deductions and as in the ordinary course of the administration of the estate will ultimately be allowed. In case the amount actually expended presents a material variance from the amount "allowed by the laws of the jurisdiction, * * * under which the estate is being administered," some question may properly arise as to whether the amount actually expended or the amount lawfully allowable shall be used. It would seem, however, to be the obvious intent of Congress that the determination of the estate tax should not wait upon the final settlement of the estate and a reduction to absolute certainty of all claims against it.

Since that case was decided the Revenue Act of 1926 has been adopted. In section 319 (a) of that Act it is provided:

Sec. 319. (a) If the Commissioner has mailed to the executor a notice of deficiency under subdivision (a) of section 308 and if the executor after the enactment of this Act files a petition with the Board of Tax Appeals within the time prescribed in such subdivision, no refund in respect of the tax shall be allowed or made and no suit for the recovery of any part of such tax shall be instituted in any court, except—

\*        \*        \*        \*        \*        \*        \*

We are not concerned with any of the exceptions. This provision was inserted in the bill by the Senate as an amendment to the House

bill, the same provision which was made with respect to refunds of income taxes, section 284 (d). Concerning this provision the report of the Senate Finance Committee (69th Cong., 1st sess., S. Rept. No. 52) says:

Under the existing law after the commissioner has determined the deficiency and mailed notice thereof to the taxpayer, the taxpayer may appeal to the Board of Tax Appeals, but if the board finds that there is a deficiency the taxpayer must pay the tax and proceed before the department and the courts for a refund. The House bill institutes a system of appeals from the decisions of the board to the circuit courts of appeals and from there on certiorari to the Supreme Court. The House bill also provides in section 281 (d) that when the deficiency letter has been sent to the taxpayer, whether or not he takes the case to the Board of Tax Appeals, his right to claim or sue for a refund for the year to which the deficiency letter relates is forever barred. This provision seems to the committee too drastic, and it is accordingly proposed in section 284 (d) of the bill that the taxpayer's right to claim and sue for refund shall be barred only if he takes the case to the board, thus preserving to h'm the option of paying the tax and then proceeding before the department and the courts to recover any excess payments by a claim or suit for refund.

But if he does elect to file a petition with the board his entire tax liability for the year in question (except in case of fraud) is finally and completely settled by the decis'on of the board when it has become final, whether the decision is by findings of fact and opinion, or by dismissal, as in case of lack of prosecution, insufficiency of evidence to sustain the petit'on, or on the taxpayer's own motion. The duty of the commissioner to assess the deficiency thus determined is mandatory, and no matter how meritorious a claim for abatement of the assessment or for refund he can not entertain it, nor can suit be maintained against the United States or the collector. Finality is the end sought to be attained by these provisions of the bill, and the committee is convinced that to allow the reopening of the question of the tax for the year involved either by the taxpayer or by the commissioner (save in the sole case of fraud) would be highly undesirable.

The petition was filed in this proceeding after the enactment of the 1926 Act. It, therefore, becomes evident that if the deductions claimed are to be allowed, they must be allowed in this proceeding before the Board; otherwise they can never be allowed. It is manifestly impossible to finally settle an estate while the Federal estate tax is still undetermined and until there is a final settlement the full amount of the commissions cannot be fixed by the court. If the position of the Commissioner is correct, we should have a situation where the estate could never deduct the full commissions. This appears to be an additional reason for following our decision in the *Stern* case, *supra*. There would appear to be no difficulty in the present case in determining the amount allowed by law. The rates which may be allowed are fixed by statute and the testimony is that the court customarily makes such allowance in the absence of mismanagement of the estate. The value of the estate has been determined. We are of the opinion that the statutory

commissions should be computed on the basis of the gross estate after deducting real estate and the property given in contemplation of death, on neither of which the executors are entitled to commissions, and the commissions so computed should be allowed as a deduction.

In an amendment to their petition, the petitioners claim as a deduction their expenses and counsel fees in connection with the present proceeding, none of which were allowed in the deficiency letter. There can be no question that such a proceeding as this is an incident to the administration of the estate and that expenses incurred therein are properly allowable as deductions. The difficulty is not with the proper interpretation of the law but in its administration. Since this is the only proceeding in which the deduction may be allowed it becomes necessary for us to determine what amount is allowable.

Here, as in the case of commissions, there is no requirement that the court having jurisdiction shall first make the allowance. The law specifies that the deduction shall be " such amounts for  *  *  * administration expenses,  *  *  * as are allowed by the laws of the jurisdiction  *  *  * under which the estate is being administered." In Iowa the executors are allowed all their reasonable expenses of administration. This proceeding was prosecuted in good faith and apparently with reasonable cause and there is no reason to doubt that the executors are entitled in their accounting to the allowance of their expenditures. Under such circumstances the duty devolves upon us to determine the amount thereof, so far as the evidence will permit us to do so.

The fee bill filed with the depositions in this case shows the expenditure of $93.60 for reporting and transcribing testimony. There is in addition the cost of a copy of the transcript of the testimony taken in the hearing before us, the expenses of two witnesses who attended in Washington from Dubuque, Iowa, and the expenses of Washington counsel, who spent at least two days in Dubuque, Iowa, taking depositions. The petitioners claim $500 in addition to attorney's fee. Their disbursements will approximate that amount, and the amount claimed should be allowed as a deduction. So far as the attorney's fees are concerned, we are without any evidence on which to determine the amount which the petitioners will be required to pay. Whether a retainer has been paid, whether the proceeding was handled on a contingent fee basis or whether the arrangement calls for a reasonable fee is not shown. We are consequently without the necessary basis on which we might determine what fee the executors may be called upon to pay. We might point out that even if we were to assume that the arrangement calls for the

234

payment of a reasonable fee, we are without knowledge of the time spent and services performed by the attorney, except in connection with the preparation of the pleadings and the actual trial of the proceeding.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ARUNDELL concurs in the result.