IRVING BANK-COLUMBIA TRUST CO., ELEANOR M. JAEGER, EDWARD Q. JAEGER, AND OTTO M. JAEGER, EXECUTORS, ESTATE OF OTTO JAEGER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20055. Promulgated June 4, 1929.

898

*Sydney G. Soons, Esq.,* and *J. Sterling Halstead, Esq.,* for the petitioners.

*F. R. Shearer, Esq.,* for the respondent.

902

[redacted]

OPINION.

ARUNDELL: In their estate-tax return the executors valued the stock held by the testator in the Company and Corporation at $500 and $62.83 per share, respectively, which values the respondent increased to $735 and $90. The values fixed by the respondent are based entirely upon the book value of the assets behind the stocks, less an amount regarded as sufficient to compensate for the fact that the decedent died a short time after a period of high earnings. The petitioners are contending that the allowances made are insufficient, considering the nature of the businesses, the decline in the market prices of the products manufactured and sold by the companies, the value of the Company's inventory in comparison with its other assets, the lack of a competent person within the organizations to assume the position made vacant by decedent's death, and the losses sustained in the businesses subsequent to the testator's death, all of which it is alleged were known, or could have been reasonably anticipated, at the basic date.

There is no evidence before us to sustain a conclusion that the conditions referred to were either known or contemplated in August, 1921, when the decedent died, to such an extent as to be reflected in the value of the stocks upon the testator's death. See *George E. Farrington et al.*, 13 B. T. A. 274; *American Trust Co., Administrator*, 13 B. T. A. 105; and *Ithaca Trust Co.* v. *United States*, 297 U. S. 151.

With the exception of the years 1918 and 1922, when the Company sustained losses, respectively, of $36,459.01 and $111,981.09, the Company made a large profit each year between 1912 and 1922, both inclusive. The profit in 1920, the year before decedent died, was $683,134.50, and in 1921, $4,074.44. The profit of about 700 per

cent in 1920 on the Company's capital stock was made notwithstanding a decline in the selling price of its products during the year from $6.50 per yard to $3 per yard. The book value of the Company's stock at the close of the year 1920 was approximately $1,400 per share. This value decreased to $1,032.49 by August 31, 1921, and on December 31, 1921, was practically the same. The earnings and net worth of the Company show a book value for its stock considerably in excess of the value fixed by the respondent as of the date of decedent's death.

Petitioners argue that the inventories of the Company are overvalued, and that since they represent the greater part of the Company's assets, the true value of its stock can not be properly determined without a downward adjustment of the inventories. In answer to this contention it is sufficient for us to say that we have not been informed of the basis used for pricing the inventory, and we are, therefore, without facts from which to determine whether the general decline in the selling price of textiles commencing in 1920 is, or is not, reflected in the inventories. We find nothing in the evidence offered with reference to the value of the stock of the Peerless Plush Manufacturing Co. to warrant us in disturbing the value fixed by respondent. The evidence relating to the value of the stock in Otto Jaeger & Son, Inc. is too meagre to warrant discussion and, in our opinion, entirely fails to overcome the prima facie correctness of respondent's finding of value.

In his determination of the deficiency in controversy, the respondent included among the assets of the estate the shares of stock of the Company and Corporation issued to Mrs. Jaeger on January 2, 1920, on the ground that the transfers were made in contemplation of or intended to take effect in possession or enjoyment at or after death.

Under section 402 (c) of the Revenue Act of 1918 any transfer of a material part of a decedent's estate made within two years prior to his death without consideration shall be deemed to have been made in contemplation of death. Unless the statutory presumption is overcome by the evidence relating to the transfers, the action of the respondent must be sustained. The evidence shows that the testator was vigorous for one of his age and that until June, 1921, when he was overcome by the illness which caused his death August 8, 1921, he never had any ailments aside from an occasional cold and slight attacks of indigestion that interfered with his usual and customary activities. The physician who attended him and his family since about 1895 described his physical condition in 1920 as "Very Good, Excellent. Unusually Good." This testimony is supported by that of the Company's bookkeeper since 1896, who was in close contact with the testator during business hours, and as salesman of the

Company's products for twenty-five years. Each of these witnesses testified that he never knew the decedent to have a serious illness prior to June, 1921. The testator never mentioned or intimated to the bookkeeper that he contemplated an early death or death sooner than a man of his age could expect. The testator did not discuss the question of his health with the salesman prior to June, 1921, when he expressed belief that the sickness of which he was then suffering would prove to be a fatal one.

In addition to the foregoing it clearly appears that the moving reason for the transfer of the shares of stock from the decedent to his wife was that he might reduce the amount of his income taxes. The evidence before us is, in our opinion, sufficient to overcome the statutory presumption that the transfers were made in contemplation of death.

The respondent has also determined that the transfers were intended to take effect in possession or enjoyment at or after death. He does not dispute the fact that the decedent made a gift of the shares of stock to Mrs. Jaeger, effective January 2, 1920, the date the shares were transferred on the corporate books, but contends that the transfers were merely a subterfuge adopted by the decedent to form a record basis for reducing the amount of his surtaxes, and that there was no intention on the part of the decedent to give Mrs. Jaeger the full and complete enjoyment of the securities prior to his death.

That the decedent transferred the stocks to his wife with the object in view that it would result in a reduction of the amount of taxes payable on the dividends thereon is clearly shown by the record. Nothing appears on the stock certificates, however, to indicate that the donor retained any rights in the stocks, and there is no evidence of record disclosing that the parties to the transactions entered into a written or verbal understanding providing for the payment of future dividends on the stock to any one other than the record owner. So far as the evidence shows the transfers were absolute, without any reservation on the part of the decedent as to the future dividends on the stocks. While the dividends declared on the stocks held by the decedent and Mrs. Jaeger were paid by checks drawn in favor of the former, the latter returned the earnings on the stocks held in her name as income to her, and there is nothing of record to show that she did not actually receive the profits on her stockholdings according to the returns she filed. Being the holder and record owner of the stocks, in the absence of an enforceable agreement whereby the dividends on the stocks were to be paid to another, she could have compelled the corporations to pay the dividends direct to her.

A similar question was before the court *In re Bullard's Estate*, 78 N. Y. S. 491, under a state statute imposing a tax on the transfer of property by gift intended to take effect in possession or enjoyment

at or after death. In holding that the transfers were not within the taxing law, the court said, among other things:

> On the question as to whether the gifts were absolute, and free from any trust to pay over the income during the life of the donor, and not incumbered with any enforceable reservation of the income arising after the date of such gifts, the facts of the case create a degree of doubt. No express contract is shown to support a trust or reservation. Nothing was said on the subject between the donor and donees at the time of the gifts. The subsequent action of all parties might imply that there existed an unexpressed understanding that the donor should have the earnings of the stock thereafter during his life, and should continue to hold office in the corporations the same as before, while owner of the stock. He did receive the dividends, and did remain president of the bank and director in the pulp company. If such were the contracts entered into between the parties at the time of the gifts or before, then, under the authority of *In re Branderette's Estate*, 169 N. Y. 437, 62 N. E. 563, and *In re Cornell's Estate*, 170 N. Y. 423, 63 N. E. 445, the stock was subject to the transfer tax. In the cases cited, contracts were clearly established; they were not implied agreements based solely upon the subsequent acts of the parties. In the case before us, while the inference of the existence of a binding agreement is strong, it is far from conclusive. The acts of the donor can as well be predicated upon the voluntary sufferance of the donees as upon a prior contract. * * * The dividends were properly declared, and paid or credited to the person appearing by the stockbook of the company to be owner of the stock. The agreement, if one existed, must have been known to the two grandsons. They were called by appellant as witnesses to prove such an agreement, but their testimony does not disclose that there was one. It was incumbent upon appellant to make this proof to sustain appellant's contention. If this proof were presented to a court on an application for the appointment of a receiver or trustee, on the death of either donee in the lifetime of the donor, to enforce a trust, as suggested *In re Cornell's Estate, supra,* and no other evidence of a binding agreement was offered, there can be little doubt but the evidence would be deemed insufficient to establish a trusteeship of this stock during the life of the donor. I am therefore of the opinion that on the proofs the decision of the surrogate is conclusive on this question.

To the same effect is *In re Thorne's Estate*, 80 N. Y. S. 419.

The finding of the Essex County Court of Common Pleas in the suit instituted by Mrs. Jaeger to recover possession of the stocks from the executors that she was not only entitled to the immediate possession of the securities, but had been the owner thereof since January 2, 1920, tends to support petitioners' contention that the transfers were to take effect immediately.

No part of the stocks of the corporations issued to Mrs. Jaeger on January 2, 1920, should be included among the assets of the estate.

The respondent declined to allow as deductions executors' and attorneys' fees in excess of the sum of $2,000, shown to have been paid. We have heretofore held that proper administrative expenses, such as executors' commissions and attorneys' fees, are allowable deductions, even though they have not been allowed by order of the

court having jurisdiction of the estate, or paid. *Samuel E. A. Stern*, 2 B. T. A. 102; *Estate of Jacob Voelbel*, 7 B. T. A. 276; and *John A. Loetscher et al.*, 14 B. T. A. 228. If the petitioners are to receive the benefit of the taxing act, the claims must be allowed in this proceeding in view of the provisions of section 319(a) of the Revenue Act of 1926.

Our particular problem here is to decide what amounts are allowable. Sections 128 and 129 of the Orphans Court Act of New Jersey (vol. 3, Compiled Statutes of N. J. 3860) reads as follows:

128. *Allowance made with reference to actual trouble.*—The allowance of commissions to executors, administrators, guardians or trustees shall be made with reference to their actual pains, trouble and risk in settling such estate, rather than in respect to the quantum of estate. (P. L. 1898, p. 762.)

129. *Limitation of rates.*—On the settlement of the accounts of executors, administrators, guardians or trustees under a will, their commissions, over and above their actual expenses, shall not exceed the following rates: On all sums that come into their hands, not exceeding one thousand dollars, seven per centum; if over one thousand dollars and not exceeding five thousand, four per centum on such excess; if over five thousand dollars and not exceeding ten thousand, three per centum on such excess; and if over ten thousand dollars, two per centum on such excess; provided, that the commissions of executors, administrators and trustees in any estate where the receipts exceed the sum of fifty thousand dollars, shall be determined by the orphans' court on the final settlement of their accounts according to the actual services rendered, not exceeding five per centum on all sums which come into their hands. (P. L. 1898, p. 762.)

The petitioners are claiming the maximum of 5 per cent allowed by the New Jersey statute. This sum, in our opinion, is not an unreasonable amount to be allowed under the statute, considering the number of executors among whom the commission will have to be divided, the nature of the estate, the length of time the estate had been under administration, and the volume of work performed by the executors.

Of the $10,000 claimed by the executors as a deduction for attorneys' fees, the respondent has allowed $2,000. Petitioners are asking for a total allowance of $40,000.

Respondent admits that petitioners are entitled to a deduction for attorneys' fees, leaving for our determination only the question of what is a reasonable estimate of the amount allowable.

The evidence before us as to the reasonableness of the amount claimed by the petitioners consists of the testimony of an attorney whose firm has represented the executors of the estate since decedent's death. Considering the size and nature of the estate, the length of time it has been under administration and the litigation the executors have been involved in in carrying out the terms of the will, we are of the opinion that $40,000, the amount claimed, is not an unreasonable amount to be allowed as a deduction for attorneys' fees.

*Judgment will be entered under Rule 50.*