ARTHUR M. LAMPORT, SAMUEL C. LAMPORT, MARKS HUREWITZ, LEONARD L. ROTHSTEIN, AND SAMUEL HELLINGER, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF NATHAN LAMPORT, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51592. Promulgated August 4, 1933.

*Emanuel H. Reichart, Esq.*, for the petitioners.
*Lewis S. Pendleton, Esq.*, for the respondent.

OPINION.

SMITH: This is a proceeding for the redetermination of a deficiency in estate tax of $27,869.73. In his brief, counsel for the petitioners alleges errors on the part of the respondent in the determination of the deficiency as follows:

(1) The failure of the Commissioner, in determining the valuation of shares of stock of Lamport Realty Co. included in this estate, to deduct as a liability of that corporation the correct amount as a reserve for income taxes and the determination of the Commissioner that the correct amount of such reserve is $6,238.16.

(2) The failure of the Commissioner to find that the amount of decedent's gifts to Keren Nehemiah was deductible from the gross estate as a charitable gift, and the determination of the Commissioner that such gift constituted a taxable transfer.

(3) The failure of the Commissioner to find that the amounts of certain pledges made by decedent during his lifetime and unpaid at the time of his death amounting to $151,237 were deductible from the gross estate as charitable gifts.

(4) The use by the Commissioner of an erroneous method of computing the amount of residue given to trustees for charitable purposes and the failure of the Commissioner to deduct the full amount of such residue properly computed, in accordance with decedent's will, from the gross estate.

(5) The failure of the Commissioner to allow as a deduction from the gross estate the amount of statutory executors' commissions.

(6) The failure of the Commissioner to allow as a deduction from the gross estate the amount of $45,000 claimed by the taxpayers for attorneys' fees.

Petitioners are the executors of the estate of Nathan Lamport, who died a citizen and resident of the city of New York on August 13, 1928. The respondent determined that the value of the gross estate for estate tax purposes was $1,409,647.43. In making such determination he included in the gross estate transfers made during the

decedent's life in the amount of $65,000. In his brief, he admits error in this regard, stating that such transfers were not "made in contemplation of death and were therefore improperly included in the gross estate. This results in an adjusted gross estate of $1,344,-647.43." The allegations of error set forth above will be considered in order.

(1) At the time of his death, the decedent owned all of the issued and outstanding stock of Lamport Realty Co., which in 1927 sold a parcel of real estate in Jamaica, in the borough of Queens, city and State of New York. The profit realized from this sale was reported by the Lamport Realty Co. to the Treasury Department for income tax purposes upon the installment basis. This basis was approved by the respondent by letter dated September 20, 1929, which letter established the percentage of profit as 44.7. On August 13, 1928, the unpaid balance of the principal of the purchase money mortgage was $142,600. The Lamport Realty Co. stock was valued by the respondent for estate tax purposes upon the basis of the net worth of the assets, including the unpaid balance on the mortgage of $142,600. The respondent included among the liabilities of the company $6,238.18, representing income taxes approved but unpaid at the time of death. The petitioners contend that the respondent should have deducted as an additional liability an estimated amount of reserve for income taxes to be paid upon the unrealized profits of the sale claimed to be in the amount of $9,350.68. The Lamport Realty Co. stock was included in the gross estate at a value of $419,333.33. The petitioners contend that this value was overstated by the respondent in the above amount of $9,350.68 and that the correct value is $409,982.65.

We are not informed as to all of the considerations which prompted the respondent to value this stock at $419,333.33. It should be included in the gross estate at its fair market value. For all that the record shows the fair market value may have been in excess of the amount determined by the Commissioner. The mere fact that the Commissioner did not take into account income taxes which might in the future have to be paid by the Lamport Realty Co. upon future collections of installment profits does not in our opinion prove the determination of the Commissioner to be in error. Upon the evidence the respondent's determination of the fair market value of the shares of stock of the Lamport Realty Co. at the date of decedent's death in the amount of $419,333.33 is approved.

(2), (3), and (4) The decedent during his lifetime made pledges for charitable purposes which were unpaid at the date of his death in the amount of $151,237. By his last will and testament he directed his executors to pay his debts and funeral expenses, which

were paid in the amount of $68,336.73. By the second paragraph of his will he made a specific bequest of household furniture, which was admittedly of the value of $788. By the third paragraph of his will he bequeathed unto his executors $100,000 in trust and provided that the net income of the fund should be paid to his widow during her life and that upon her death the principal thereof should be paid to the trustees of "ANSL CHARITY FOUNDATION ", provided:

* * * if such foundation shall have been created either as a trust or as a charitable corporation during my lifetime; and in the event that such foundation shall not have been so created during my lifetime then and in that event upon the death of my said wife, to pay over the principal of said fund to the trustees named in clause or paragraph " FIFTH " of this, my Will, to become a part of the principal of the perpetual trust in said paragraph created.

The Ansl Charity Foundation was not created either as a trust or as a charitable corporation during the lifetime of the decedent.

The respondent has determined that the present value of the widow's life estate in the $100,000 trust fund was $40,057 and that the value of the remainder interest, which was dedicated to a charitable purpose and deductible from the gross estate, is $59,943.

By the fourth paragraph of his will, the decedent directed his executors to hold in trust a sum equal to one half the amount of his net estate for the benefit of his grandchildren. He further provided:

* * * In determining the amount of my net estate for the purpose of this clause or paragraph, there shall be included the amount of any gifts which may have been made by me during my lifetime to a trust or charitable corporation to be known as "ANSL CHARITY FOUNDATION " and any amounts which may have been given to such trust or corporation shall be deemed to be a part of my estate, and shall be treated as advances on account of the gift hereinafter made to such trust or corporation. In determining the amount of my net estate for the purpose of this clause or paragraph no deductions shall be taken for any amount which I may have pledged myself to give for any charitable or benevolent purpose, even though such pledge or pledges may be in such form as to constitute legal debts or obligations of my estate. My intent as to such determination is that the total amount hereby given to my executors in trust shall be equal to the entire amount of my gifts for charitable purposes, including gifts made during my lifetime to said "ANSL CHARITY FOUNDATION " and also including pledges to other charitable organizations made by me during my lifetime and remaining unpaid at the time of my death

By the fifth paragraph of his will he declared:

It is my intention during my life to organize a trust fund or charitable corporation to be known as the "ANSL CHARITY FOUNDATION." The purpose of such organization is to be the furnishing of financial assistance to institutions for the teaching of the strict orthodox Jewish faith, and particularly for the training and preparation of rabbis and teachers in that faith, and for the furnishing of financial assistance to free Hebrew Schools; both such training schools and such Hebrew Free Schools may be located in the United States of America, in Palestine, or in Europe; and for the purpose of assisting worthy

persons financially by loans of small amounts, such loans to be made upon the personal note of the borrower, secured by proper endorsement, and to be repaid in small installments and without interest; and also for such charitable or benevolent purposes as may be set forth in the instrument creating such trust or in the charter and the by-laws of such corporation.

\*     \*     \*     \*     \*     \*     \*

(b) In the event that such intention shall not have been carried out during my lifetime, I give, devise and bequeath unto SAMUEL C. LAMPORT, ARTHUR M. LAMPORT, MARKS HUREWITZ, SAMUEL HELLINGER, AND SOLOMON LAMPORT, ABRAHAM E. ROTHSTEIN and SAMUEL L. SAR, in trust as a perpetual trust to be known as the "ANSL CHARITY FOUNDATION" all of the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, to enter into the possession of the same and to receive the rents, issues and profits thereof with full power, at any time, to sell and convey, lease, exchange or otherwise dispose of all or any part thereof upon such terms and conditions as they may deem proper, and to invest and re-invest the proceeds or any part thereof in such securities as are allowed by law to be held by trustees, and upon the further trust after payment of debts and charges, to use only the net income thereof for the following purposes, to wit; the furnishing of financial assistance to institutions for the teaching of the strict orthodox Jewish Faith, and particularly for the training and preparing of rabbis and teachers in that faith, and for the furnishing of financial assistance to free Hebrew Schools; both such training schools and such Hebrew Free Schools may be located in the United States of America, in Palestine or in Europe; and for the purpose of assisting worthy persons financially by loans of small amounts, such loans to be made upon the personal note of the borrower, secured by proper endorsement, and to be repaid in small installments and without interest; and, in general, in the discretion of the trustees, for the financial assistance of worthy Jewish charities.

\*     \*     · \*     \*     \*     \*     \*

In computing the amount of my net estate for the purpose of this clause or paragraph, as well as for the purpose of clause or paragraph "FOURTH" of this, my Will, no deductions shall be taken for and such net estate shall be deemed to include the amount of any pledges made by me for any charitable or benevolent purpose, even though such pledge or pledges may be in such form as to constitute legal debts or obligations of my estate; and such pledges remaining unpaid at the time of my death shall be charged upon the gift hereby made to such trust or corporation and shall be paid as they become due out of the income of said gift, and if such income shall be insufficient, then the deficiency shall be made up out of the principal of said gift.

By a codicil to his will he bequeathed to one of his daughters, Mildred Rothstein, $75,000 and directed:

\* \* \* that such sum be paid out of the moneys heretofore given to my executors in trust by the provisions of clause or paragraph "FOURTH" of my Last Will and Testament, and the amount given to my executors in trust pursuant to said clause or paragraph "FOURTH" of my Last Will and Testament shall be reduced by said sum of Seventy-five thousand ($75,000) Dollars. This bequest to my daughter Mildred Rothstein is not intended to be in lieu of the provisions made for the benefit of her children in subdivision "h" of clause or paragraph "FOURTH" of my Last Will and Testament \* \* \*.

The petitioners and the respondent have set forth formulas for the determination of the amount of the residue of the estate which is to go to charity under the fifth clause or paragraph of the will. The petitioners contend that the total amount included in the gross estate which goes to charity is $662,310.35, while the respondent contends that the residue passing to charity, after the allowance of unpaid pledges chargeable against the other one half of the net estate ($151,237), is $466,495.85.

It is admitted by the respondent that the value of the remainder interest in the $100,000 trust fund created by clause or paragraph third of the will, amounting to $59,943, is a legal deduction from the gross estate. The respondent also admits that the amount of the residue provided for by paragraph fifth of the will is likewise a charitable bequest deductible from the gross estate.

In our opinion, the correct determination of the residue under paragraph fifth of the decedent's will is to be determined as follows:

| | | |
|---|---:|---:|
| Gross estate | | $1,344,647.43 |
| Debts and charges | $68,336.73 | |
| Specific bequest | 788.00 | |
| Present value of widow's life interest in trust fund | 40,057.00 | |
| Attorneys' fees | 30,000.00 | |
| Commissions to executors (tentatively determined) | 86,691.57 | |
| | | 225,873.30 |
| Net estate | | 1,118,774.13 |
| One half to grandchildren | | 559,387.06 |
| Residue to charity | | 559,387.06 |

The computation of the amount of the executors' commissions will be settled under Rule 50.

It will be noted from the above quoted paragraph fourth of the will of the decedent that he declared that:

\* \* \* *My intent as to such determination is that the total amount hereby given to my executors in trust shall be equal to the entire amount of my gifts for charitable purposes, including gifts made during my lifetime to said "ANSL CHARITY FOUNDATION" and also including pledges to other charitable organizations made by me during my lifetime and remaining unpaid at the time of my death.*

It is apparent from this provision that the testator intended that his gifts to charity should not exceed the value of his gifts to his trustees for the benefit of his grandchildren. We are therefore of the opinion that in the determination of the " net estate," referred to in the will, there should not be deducted from the gross estate the full amount of the $100,000 trust fund, the income of which was to be paid to the decedent's widow during her lifetime. The present value of the widow's life interest in the trust fund has been deter-

mined by the respondent to be $40,057. The petitioners do not except to such determination of value. The balance of the $100,000 trust fund equals the present value of the remainder interest which is a part of the residue. Likewise, the $151,337 of charitable pledges made by the decedent during his lifetime and unpaid at the date of his death constitutes a part of the residue going to charity. This is for the reason that the will specifically provides that such pledges for charitable purposes are to be taken out of the residue. Manifestly, no argument may be made that they should be deducted a second time, nor do we understand that the petitioners make such contention.

From the above computation it is apparent that the net estate subject to the estate tax (inclusive of the specific exemption) is composed of the gift to trustees for the benefit of the grandchildren in the amount of $559,387.06 plus the specific bequest of $788, and $40,057, the present value of the widow's life interest in the trust fund of $100,000.

(5) and (6) In the computation of the deficiency the respondent has made no deduction for executors' commissions and for attorneys' fees. His reason for not making such deduction is that they have not been paid and the respondent was not satisfied that executors' commissions or attorneys' fees would be paid.

The amount of executors' commissions under the law of the State of New York is fixed by the statute, to wit, section 285 of the Surrogate's Court Act. The amount of such statutory commissions in the case of a single executor is computed at the rate of 5 percent upon all sums received and paid out not exceeding $2,000, 2½ percent upon all additional sums not exceeding $20,000, 1½ percent upon all additional sums not exceeding $28,000, and 2 percent upon all sums in excess of $50,000, the value of any real or personal property and the increment thereof, received, distributed, or delivered, being considered as money except in cases of a specific legacy or devise; and in a case where the gross value of the principal of the estate amounts to $100,000 or more, each executor is entitled to full compensation on principal and income computed as above set forth, allowed to a sole executor, unless there are more than three in which case the compensation to which the three would be entitled must be apportioned among them. The evidence in this case is to the effect that the statutory commissions will be paid and we are of the opinion that they are a legal deduction from gross income. See *Samuel E. A. Stern et al., Executors*, 2 B.T.A. 102; *Estate of Jacob Voelbel*, 7 B.T.A. 276; *John A. Loetscher et al., Executors*, 14 B.T.A. 228; *Georgette Goldschmidt et al., Executors*, 14 B.T.A. 1010; *John F. Degener, Jr., et al., Executors*, 26 B.T.A. 185.

The petitioners claimed the deduction of attorneys' fees in the amount of $45,000. The attorneys' fees have not been paid. The

proof is that they will amount to at least $30,000. The Board holds that attorneys' fees in the amount of $30,000 are a legal deduction from the gross estate in the determination of the deficiency.

*Judgment will be entered under Rule 50.*