WILLIAM RHINELANDER STEWART, JR., AND SPOTSWOOD D. BOWERS, EXECUTORS UNDER THE WILL OF WILLIAM RHINELANDER STEWART, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67776. Promulgated September 27, 1934.

*Spotswood D. Bowers, Esq.,* for the petitioners.
*Eldon McFarland, Esq.,* for the respondent.

### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in estate tax in the amount of $72,131.64. The questions for the determination of the Board relate to (1) the fair value of 3,639 shares of stock of the Rhinelander Real Estate Co. at the date of the death of the decedent on September 4, 1929; (2) what percentage of deduction, if any, should be allowed from the mathematical fraction in determining the value of one-fifth and one-third undivided interests in real estate constituting a part of the estate of the decedent; (3) the right to deduct from the gross estate $10,000 attorneys' fees beyond the amount of $20,000 already actually paid.

The petitioners are the executors of the estate of William Rhinelander Stewart, who died a resident of New York on September 4, 1929.

The first question relates to the value of 3,639 shares of capital stock of the Rhinelander Real Estate Co. owned by the decedent at the date of his death. These were returned for estate tax purposes at a value of $126.61 per share, which was the value at which

the stock was distributed to certain legatees of one Julia Rhinelander under date of February 24, 1928. The respondent has raised the value to $191.31 per share in the determination of the deficiency.

The Rhinelander Real Estate Co. was incorporated in 1901. It was formed to hold real estate of the then Rhinelander family with the idea of avoiding partition suits in the case of deaths in the families of the stockholders who turned in their property in exchange for capital stock. The stock has always been closely held and there have been no sales from which the fair market value might be determined at any time. During the 33 years of the corporation's existence it has been its policy never to sell its real estate, no matter how high a price was offered, and there has never been a sale of any property except one small piece 23 feet by 80 feet. It has also been the policy of the company to pay out all its earnings in dividends, with the result that its cash surplus has never been large. Much of the real estate owned has increased in value from the date acquired, but such appreciation in value is not reflected upon the corporation's books of account. The book value of its real estate on December 31, 1928, was approximately $8,750,000, against which there were mortgages of $3,267,460; the book value of its real estate on December 31, 1929, was approximately the same amount and the mortgages thereon were $3,517,500. The parties have stipulated, however, that the fair market value of the real estate held by the company at the date of the death of the decedent on September 4, 1929, was $14,919,500. In the determination of the fair value of shares of the capital stock on that date the respondent has used the market value of the real estate at the date of death, less mortgages on the property, and has then divided that figure by the number of shares of stock outstanding.

The petitioner contends that the value determined by the Commissioner is far in excess of the fair value; that the earnings upon the stock and the dividends paid should be taken into account, and that by doing so a value of approximately $125 per share is obtained.

From 1923 to 1929, inclusive, the capital stock of the company remained at $6,000,000 divided into 60,000 shares. The net income of the corporation, the percentage of dividends earned on the outstanding stock, and the percentage of dividends paid were as follows:

| Year | Net income | Dividends earned on stock | Dividends paid |
|---|---|---|---|
| | | *Percent* | *Percent* |
| 1923 | $413,207.16 | 6.887 | 6.75 |
| 1924 | 411,375.69 | 6.856 | 7 |
| 1925 | 427,005.38 | 7.117 | 7.75 |
| 1926 | 464,726.53 | 7.745 | 7.75 |
| 1927 | 489,776.55 | 8.163 | 8 |
| 1928 | 299,055.99 | 4.984 | 7.50 |
| 1929 | 245,235.49 | 4.087 | 7 |

The securities and properties of the estate of William Rhinelander Stewart were distributed to the legatees on June 12, 1930. At that time the shares of stock were distributed at a value of $165.39 per share. The distribution based upon this valuation was approved by the Surrogate's Court for New York County on or about October 28, 1930. The only purpose of setting a value on the stock was to permit the figuring of executors' commissions. In *William R. Stewart et al., Executors and Trustees*, 27 B.T.A. 593, it was stipulated before the Board that the fair value of shares of this stock on October 15, 1927, the date of the death of Lispenard Stewart, was $171.82 per share. This stipulation was entered into by the petitioners in consideration of the respondent's waiving his contention that certain assets of the estate were transferred in contemplation of death.

In support of their contention that the fair value of the shares of stock on September 4, 1929, was not in excess of $126.61 per share the petitioners offered as a witness H. C. Kranich, who was a member of a firm which was a member of the New York Real Estate Securities Exchange, Inc. Kranich testified that in his opinion the fair market value of the shares of stock on the date named was not in excess of $125 per share. He based the valuation upon a consideration of the selling price of the shares of stock of other companies similarly circumstanced, upon the earnings and dividend record of the Rhinelander Real Estate Co., and upon the admitted value of its assets.

In *Ray Consolidated Copper Co.* v. *United States*, 268 U.S. 373, the Supreme Court pointed out that, " The capital stock of a corporation, its net assets, and its shares of stock are entirely different things. * * * The value of one bears no fixed or necessary relation to the value of the other."

We are of opinion that the admitted fair value of the assets of the corporation is not necessarily controlling with respect to the fair value of its shares. The assets of the corporation are at the risk of the business.

On consideration of all of the evidence we are of the opinion that the fair value of the shares at the date of death of the decedent was $165.39 per share, the value at which they were distributed to the legatees in 1930.

The second question relates to the value of fractional interests in 44 parcels of real estate owned by the decedent at the date of his death. The evidence shows that the decedent owned one-fifth undivided interests in 30 parcels of real estate; that upon the death of Lispenard Stewart on October 15, 1927, the decedent acquired an additional one-tenth interest in the same parcels of real estate. Consequently, upon his death, he owned undivided three-tenths interests in 30 parcels of real estate and undivided one-third interests in 14

parcels. The petitioners and the respondent are in agreement as to the value at the date of death of the decedent of the entire parcels of real estate in question.

These fractional interests were returned by the executors at a discount of 40 percent from the like fractional part of the admitted value of the entire parcel. The respondent in the determination of the deficiencies has disallowed such discount upon the theory that minority fractional undivided interests in real estate have the same value as the proportionate part of the admitted value of the entire parcel.

In support of their contention that fractional undivided interests in real estate in New York have not a value equal to a like fraction of the fair value of the entire parcel the petitioners have offered the testimony of two qualified experts in New York real estate. One of these testified that in his experience it was hard to find a buyer for minority fractional undivided interests in real estate in New York City. He testified that ordinarily fractional interests were sold in connection with other fractional interests; in other words, that a purchaser of property was not interested in purchasing fractional interests, but that where he was interested in purchasing a parcel of real estate and could purchase several undivided interests making up the total he would make the purchase; and that where the owner of a fractional interest tried to sell it, he found he could not secure a purchaser except at a substantial discount. Another of the petitioners' witnesses testified that he and his firm had made a number of sales of fractional interests in real estate over a period of more than 20 years and that in practically every case a purchaser could be found for the fractional interest only at a discount. He cited one particular case where a person desiring to purchase a given piece of property was willing to pay $55,000 for the total parcel but would pay and did pay only $16,000 for a one-third undivided interest. He further testified that the owner of an undivided interest of a parcel of real estate is limited in the control, management, operating, and renting of the building; that he is limited by the wishes and whims of the other coowners; that it is a consideration of these factors that makes it very difficult to find a purchaser for minority fractional interests. He admitted that under the New York law the owner of an undivided interest could bring a partition proceeding for the sale of the property, but testified that some such proceedings were long drawn out and that often a prospective purchaser for the entire property was not interested in acquiring the property after the partition proceedings had been completed.

The respondent pointed out that in some cases a minority interest had a nuisance value which more than offset the disadvantages possessed by the owner of the fractional interest; that in some cases a

prospective purchaser of a parcel of real estate had to pay the owner of a minority interest a bonus in order to get him to agree to a sale.

That fractional interests should be given a valuation below the mathematical fraction of the value of the entire property has been held in a number of New York cases. In *Matter of Gibert*, 176 App. Div. 851, it was held that a transfer tax appraiser should make a deduction in valuing an undivided fractional interest in real property because of the diminution in value which results from the fact that it is an undivided fractional interest only. In the course of its opinion the court stated:

> This deduction is due in part to cover the expenses incident to a partition action, but is chiefly due to the fact that the owner of such an undivided interest, particularly if, as in the case at bar, it be a minority interest only, cannot control it, but holds it practically at the mercy of the owners of the other interests. For such an interest there is only a limited market, the proof being that experience shows that the purchasers of undivided interests are usually speculators and operators. This restrictive market for such interests lowers their market value.

Testimony as to the proper deduction for the one-third interest in the real property given before the appraiser was 25 percent, but nevertheless he found a deduction of only 15 percent. The state appealed on the ground that there should be no allowance for fractional interest, and the estate appealed on the ground that the deduction should have been 25 percent. The order, so far as appealed from by the state, was affirmed, but so far as appealed from by the estate was reversed.

In *In re Lobes Estate*, 164 N.Y.S. 592, it is said:

> It appeared from the evidence of this expert that the value of the one-half interest is less than one-half of the value of the entire plot. The appraiser disregarded this evidence and ascertained the value of decedent's one-half interest to be one-half the value of the entire plot as appraised by the state comptroller's expert. This was incorrect, as the only evidence before him was to the effect that the one-half interest is worth less than one-half the value of the entire plot.

In *Matter of Turner*, 221 App. Div. 116, it was held that, in fixing the transfer tax on a power of appointment exercised by the testator in the disposition of a fractional undivided interest in real property, the customary allowance should be made by reason of the fact that the interest in the real property was fractional. The court stated:

> * * * If this donee had owned this fractional interest and devised it by will the allowance would concededly have been proper. Therefore it must be granted in the case at bar.

In *Emilie Baer et al., Executors*, 3 B.T.A. 881, the Board refused to discount the value of the fractional interest in real estate from a like fraction of the value of the entire parcel, since the evidence presented in that case was to the effect that sales of fractional interests

were ordinarily made without discount. Such is not the evidence in the case at bar. The only material evidence shows that fractional interests sold separately from the sale of the entire property are ordinarily sold at a discount.

One of the petitioners' witnesses was of the opinion that three-tenths and one-third undivided fractional interests should be reduced by about 40 percent in order to arrive at fair value; another was of the opinion, based upon his experience, that the sale of fractional one-fifth and one-third interests should be discounted by 30 percent and 25 percent, respectively. A witness for the Government testified that in his opinion no discount should be allowed in the determination of the value of fractional interests. He was not able, however, to support his testimony with a record of actual sales.

From a consideration of all of the testimony, we are of the opinion that the fractional interests owned by decedent at the date of his death should be discounted to the extent of 15 percent of the mathematical equivalent of the admitted value of the entire parcel. This is practically in accord with the amount of discount suffered in the comparable sale of a fractional interest adverted to above and with the decision of the court in *Matter of Gibert, supra,* and in our opinion represents the proper discount to be applied to the fractional interests involved.

The third point in issue relates to the deduction from the gross estate of $10,000 counsel fees which have not yet been paid by the estate but have been agreed upon and will be paid in the settlement of the estate. The contentions of the petitioners upon this point are sustained. *Estate of Wm. H. Larkin,* 1 B.T.A. 1045; *John A. Loetscher et al., Executors,* 14 B.T.A. 228; *Irving Bank-Columbia Trust Co. et al., Executors,* 16 B.T.A. 897; *Arthur M. Lamport et al., Executors,* 28 B.T.A. 862.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*