NANCY N. MOONEYHAM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mooneyham v. Commissioner
Docket No. 15661-89
United States Tax Court
T.C. Memo 1991-178; 1991 Tax Ct. Memo LEXIS 199; 61 T.C.M. (CCH) 2445; T.C.M. (RIA) 91178; April 17, 1991, Filed *199 Decision will be entered under Rule 155. Glenn C. Carpenter and John O. Germino, for the petitioner. Mary E. Wynne, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 59,650 in petitioner's gift tax liability for 1985. The issue for decision is the value of a one-half undivided interest in real property given by petitioner to her brother. FINDINGS OF FACT Operative Facts
Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner was a resident of Rancho Mirage, California, at the time she filed her petition. Prior to January 2, 1985, petitioner owned 100 percent of certain real property consisting of approximately 62,000 square feet on North Wolfe Road in Sunnyvale, California (the property). On January 2, 1985, petitioner transferred a 50-percent undivided interest in the property to her brother. In 1985, petitioner and her brother each contributed an undivided 50-percent interest in the property to a partnership known as "Nancy-Wolfe Investments, A California General Partnership." The partnership constructed a single-story *200 commercial building on the property. The building was completed in September 1986. Petitioner filed a gift tax return for the calendar year ended December 31, 1985, reporting a gift in the amount of $ 488,000 arising out of the transfer of the property. The amount reported on the gift tax return was supported by an appraisal, dated April 11, 1985, by David Ingram, Jr. (Ingram), attached to the return (the Ingram I appraisal). The Ingram I appraisal determined that the value of the property as a whole, as of October 10, 1984, was $ 1,302,000, but that, after applying a discount of 25 percent for a fractional interest, the value of the portion transferred was $ 488,000. In the notice of deficiency sent March 31, 1989, respondent determined that the fair market value of the gift was $ 651,000, 50 percent of the value of the whole property determined in the Ingram I appraisal. Procedural Facts
In the petition filed June 30, 1989, petitioner alleged, among other things: (1) The fair market value of the Property gifted to Justin J. Jacobs, Jr. on January 2, 1985 was correctly valued at $ 488,000, based on comparable sales of similar properties as substantiated by an informed *201 Member of the American Institute of Real Estate Appraisers.
By notice served May 9, 1990, this case was set for trial in San Francisco, California, on October 15, 1990. Attached to the Notice Setting Case for Trial was the Court's Standing Pre-Trial Order, which stated, among other things, that documentary and written evidence was to be marked and stipulated in accordance with Rule 91(b), Tax Court Rules of Practice and Procedure, and that: Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown. * * *
The Standing Pre-Trial Order required that trial memoranda be submitted to the Court and served on the adverse party at least 15 days before the trial date. The Standing Pre-Trial Order also set forth the requirement that any expert witness to be called by a party prepare a written *202 report to be submitted to the Court and served upon the adverse party at least 30 days before the trial, in accordance with Rule 143(f), Tax Court Rules of Practice and Procedure.
In a letter dated September 13, 1990, which was submitted as an expert report for petitioner, Ingram valued the property as a whole at $ 1,105,000, and he valued a one-half interest in the property at $ 414,375 on the date of the gift (the Ingram II appraisal). The Ingram II appraisal ignored comparable sales used in the Ingram I appraisal and set forth various statistics purportedly demonstrating a decline in the market for industrial properties in Santa Clara County (including, but not limited to, Sunnyvale) during 1985. Neither the Ingram I appraisal nor the Ingram II appraisal set forth any comparable sales or other explanation supporting the opinion of Ingram that a 25-percent discount for a fractional interest was appropriate. A report of John H. Denton (Denton), a lawyer and real estate appraiser, was also submitted for petitioner. Denton reviewed various reasons why a discount for a fractional interest would be required, based on his experience, and rendered the opinion that a discount in the *203 range of 15 percent to 30 percent would be appropriate. He did not identify factors that would determine whether the discount in a particular case would be at the upper or lower end of the range he used. On October 17, 1990, at the commencement of trial, petitioner's counsel indicated for the first time that he wished to offer in evidence copies of deeds reflecting sales that counsel's office "handled years ago." By using those deeds, petitioner's counsel intended to support Denton's trial testimony that Denton then believed that 25 percent was the proper discount. Petitioner's counsel sought to justify the belated tender of the documents by reference to a contention in respondent's trial memorandum that comparable sales are necessary to satisfy petitioner's burden of proof. That memorandum, however, had been served September 28, 1990. The Court sustained respondent's objection on the ground that the documents had not been exchanged in accordance with the Standing Pre-Trial Order, when petitioner's counsel first secured the copies of the deeds, or at the calendar call on October 15, 1990, and respondent was prejudiced in being unable to verify the facts that the deeds supposedly *204 established. ULTIMATE FINDINGS OF FACT As of the date of the gift, the fair market value of the property owned by petitioner on North Wolfe Road in Sunnyvale, California, was $ 1,302,000. The value of a 50-percent fractional interest was 50 percent of the total less 15 percent, or $ 553,350. OPINION We have set forth as facts found by us the procedural history and the methodology used by petitioner's experts because those facts are material to our rejection of the conclusions of those experts. Petitioner used the fair market value set out in the Ingram I appraisal on the gift tax return filed in relation to the gift and reaffirmed that value in her petition filed with this Court. As an owner, her opinion of value may be given weight. Her return and petition were admissions that should be binding on petitioner absent cogent proof that the reported value was erroneous. See, e.g., Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989). The testimony offered by petitioner in this case to support a lower value is not cogent proof; it is barely evidence. Ingram testified at trial and attempted to disavow his 1985 appraisal, which was proximate in time *205 to the gift, by indicating that he had then been away from and had lost touch with the geographical area. He acknowledged that the comparables used by him in 1985 were still comparables, although his 1990 appraisal ignored them. On cross-examination, he testified about his 1990 use of statistics as follows: Q Then these numbers may not be indicative and probably are not indicative of the value of the subject property? A There was no attempt to make them comparable. Q Thank you. Your letter states that Sunnyvale was not affected by the down turn in the market until later than the rest of Silicon Valley. Isn't it true that North San Jose was hit harder and faster than Sunnyvale by the down turn in the market? A Yes. I think so. Q So then doesn't the averaging of North San Jose sales figures with Sunnyvale sales figures distort the picture of Sunnyvale land values as portrayed in your Table 3? A There may be some distortion.
We conclude that the Ingram I appraisal as to the value of the whole property, which was initially asserted by petitioner and was adopted by respondent, is much more reliable than the Ingram II appraisal. Denton, although claiming to be a real *206 estate appraiser, did not give an opinion of the value of the whole property. His report set out various reasons why a 15 to 30-percent discount for a fractional interest of property would be appropriate. Neither his report nor his testimony at trial gave any reason for choosing 25 percent as applied to the property in issue other than the use of 25 percent by Ingram. Petitioner's counsel complained at trial that Denton was prevented from explaining his conclusion that 25 percent was appropriate because respondent objected to and the Court excluded documents from petitioner's counsel's file shown to the witness shortly prior to trial but not shown to respondent prior to trial. Regardless of the untimeliness of this tender of documents, an expert's opinion should be based on objective information that he independently has available or secures, not information so blatantly foisted upon him by a party's representative. His credibility is adversely affected when he is thus made into an advocate for the party. See Estate of Halas v. Commissioner, 94 T.C. 570, 577-579 (1990). Cross-examination of Denton disclosed further that his report and testimony were in large *207 part petitioner's counsel's argument in the form of testimony. The Court disapproves of this methodology in this case and as a general practice. On the other hand, the testimony of Ingram and of Denton was some, although weak, evidence that the fair market value of a fractional interest in real property cannot be derived merely by applying the percentage of the interest in the whole to the value of the whole property. Petitioner contends that a discount is appropriate because of problems of control, lack of marketability, and costs of partition relating to a fractional undivided interest. Petitioner's arguments are logical and are supported by numerous precedents. See Propstra v. United States, 680 F.2d 1248 (9th Cir. 1982) [15 percent]; Estate of Campanari v. Commissioner, 5 T.C. 488, 492 (1945) [12-1/2 percent]; Estate of Henry v. Commissioner, 4 T.C. 423, 447 (1944) [10 percent], affd. 161 F.2d 574 (3rd Cir. 1947); Stewart v. Commissioner, 31 B.T.A. 201 (1934) [15 percent]; Estate of Youle v. Commissioner, T.C. Memo 1989-138 [12-1/2 percent]. Respondent argues *208 that a discount is not appropriate in this case because petitioner and her brother had a plan jointly to develop the property through a partnership. Respondent persists in attempting to have the Court consider the identity of a related transferee of property in determining fair market value -- a position that has repeatedly been rejected in favor of assuming a hypothetical unrelated buyer. See, e.g., Propstra v. United States, 680 F.2d at 1251-1252; Estate of Bright v. United States, 658 F.2d 999, 1001 (5th Cir. 1981); Minahan v. Commissioner, 88 T.C. 492, 499 (1987). In any event, the reasons for discounting the fractional interest in this case continued to have force even after the transfer, because the donee only had a 50-percent interest in the subsequent venture. Respondent also contends that petitioner has not satisfied her burden of proving that any discount is appropriate. Respondent relies on Estate of Campanari v. Commissioner, supra; Estate of Clapp v. Commissioner, T.C. Memo 1983-721; and Estate of Iacono v. Commissioner, T.C. Memo 1980-520. *209 There is, however, evidence in this case that a discount is appropriate and, as indicated above, that evidence is consistent with common sense and precedent. Respondent has presented no evidence from which the Court could conclude that, under the facts of this case, no discount or a lesser discount was appropriate. We are not bound by the opinion of any expert witness when that opinion is contrary to our own judgment, and we may embrace or reject expert testimony, whichever, in our best judgment, is appropriate. Chiu v. Commissioner, 84 T.C. 722, 734 (1985), and cases cited therein; see Estate of Fawcett v. Commissioner, 64 T.C. 889, 900-901 (1975). Based on this unsatisfactory record, therefore, our best judgment is that a discount is appropriate and that in this case a discount of 15 percent must be applied to one-half of the value of the whole property as found in the Ingram I appraisal to obtain the fair market value of the 50-percent interest given by petitioner to her brother. Decision will be entered under Rule 155.